EARL BOYD SMITH, APPELLEE, v. J. H. BAILEY ET AL., APPELLANTS.

FILED MARCH 11, 1921. · No. 21320.

1. Evidence: WRITTEN CONTRACT: PAROL EVIDENCE. Where a written contract is not uncertain, indefinite or ambiguous, and where the terms used have an apparent intent, which cannot reasonably be taken to have other meaning than as used, the statute (Rev. St. 1913, sec. 7909) has no application, and evidence, extrinsic to the writing, cannot be admitted to show an oral agreement during the negotiations leading up to the signing of the written instrument.

2. ———: ———: ———. Even though a written contract, in the light of its purpose and subject-matter and the circumstances under which it was executed, may have been determined to be incomplete, extrinsic evidence cannot be admitted for the purpose of proving a supplemental provision, inconsistent or in conflict with the expressed intention of the parties, as embodied in the writing.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. Reversed.

L. H. Blackledge, Bernard McNeny, T. S. Allen and E. G. Maggi, for appellants.

Wilmer B. Comstock, contra.

FLANSBURG, J.

This action seems to have been for damages, as well as to recover $3,000 as the agreed price for certain wells constructed by the plaintiff. The case was submitted to the jury as an action to recover the contract price, and the jury returned a verdict of $2,500 against defendants. Defendants appeal.

The record shows that there had existed a shortage of water in the municipal wells of the city of Red Cloud. The city council had ordered tests made for other wells and had endeavored to increase the water supply, but without success. Plaintiff was confident that he could furnish a sufficient amount of water by constructing shallow wells at certain points and by siphoning water from them into the deeper city wells. The plaintiff's plan required no pumps. The city pumps were sufficient to draw the air from the siphon, which would commence the flow of water, after which, it was considered, the siphon would be self-operating and provide a continuous stream of water, with little cost of operation or maintenance.

For some reason, the city made no direct agreement with plaintiff, but a number of citizens of Red Cloud, the defendants in this case, did enter into a written agreement with him, and it appears that they had some sort of an understanding with the city that they would be reimbursed for what expenditures they should make. The written contract was drawn up and circulated among the citizens of the town, 54 of whom signed.

It provided that the plaintiff, and one Nelson, to whose rights the plaintiff has now succeeded, should construct certain wells, ditches and conduits within 60 days from the signing of the contract, and thereafter should receive $1 for every day that they should be able to conduct into the city wells 250,000 gallons of water. The contract further recited that it was to be "subject to the *privilege* on the part of the * * * (citizens) to purchase the well or wells and system by which * * * (plaintiff and Nelson) supply said water for $3,000, in which event the obligation to pay $1 a day ceases. The said Smith and Nelson agree to sell to the first parties *at any time* for $3,000 all their rights and interests in any well or wells, ditches, pipes, conduits, and other means of supplying and conducting said water."

The testimony in behalf of the plaintiff is to the effect that the plant was constructed, as agreed, at a cost to

him of from $2,000 to $2,500, and that 250,000 gallons of water, or as much thereof as the city was able to use, was conducted into the city wells daily for the period of three years, during which time the plaintiff received from the defendants $1 a day. After the three years, however, the defendants refused to make any further payments, though the plaintiff claimed to be able and willing to continue in the performance of his contract. The defendants justify their action in refusing to make further payments on the ground that the wells constructed by the plaintiff fell far short of supplying the amount of water specified in the contract.

Error is predicated upon the admission of evidence and upon instructions given by the court, based upon the evidence so introduced. The evidence complained of was admitted upon the theory that the contract was ambiguous, indefinite and incomplete, and that oral testimony and extrinsic evidence could be resorted to, to supplement the written contract and to establish the real and entire agreement between the parties.

By the plaintiff's testimony, which is corroborated to some extent by the minutes of the city council, there is evidence tending to show that the plaintiff had an understanding with certain signers of the contract that, if the wells produced the amount of water represented, and that if the project proved to be successful for the period of one year, it should then be obligatory upon the citizens signing the contract to purchase the plant from the plaintiff at the price of $3,000. It is upon such verbal agreement that the judgment of the lower court is based.

The vital question in the case before us is whether such an understanding and agreement may be allowed to be shown by evidence extrinsic to the written instrument.

Though generally held that contracts for the performance of services or for the continuous furnishing of commodities are, when the contract itself specifies no period of duration, terminable, upon reasonable notice, at the will of either party to the contract (*McCullough-Dalzell Cruci-*

*ble Co. v. Philadelphia Co.*, 223 Pa. St. 336; *Stonega Coal & Coke Co. v. Louisville & N. R. Co.*, 106 Va. 223, 9 L. R. A. n. s. 1184; *Echols v. New Orleans, J. & G. N. R. Co.*, 52 Miss. 610; *Bailey v. Stafford, Inc.*, 166 N. Y. Supp. 79; 13 C. J. 604, sec. 630), the case here hardly comes within that rule. The plaintiff's contract in this case was to build an adjunct to the city water plant, and his wells, by automatic operation, were expected to increase the flow of the city wells 250,000 gallons a day. His contract was more than the furnishing of a commodity, it was, as well, to build a structure and to make the necessary expenditures to that end. It is apparent from the contract that it was not contemplated by the parties that, the structure being complete and in successful operation, the citizens obligated could, at will, declare the duration of the contract at an end within a few days or in one or two years after the performance of the contract had begun. The plaintiff had made an investment, had constructed an addition to the city water plant, and these properties would obviously be rendered absolutely worthless to him, should his contract be terminated. Provision was made so that he might derive an income from his investment and have his capital protected. He was to receive $1 a day for every day that his apparatus should perform and for every day that he should be able to conduct into the city wells the required amount of water. The rate he was to receive—$365 a year—was a sufficient income on a $2,000 or $2,500 investment, when there was to be no cost of operation, and little expense for maintenance. With the object, however, of allowing the citizens obligated to put an end to the daily-payment provision of the contract, it is apparent that the privilege of the purchase of the plant at $3,000 was inserted.

The contract has a definite legal meaning as to its duration. The citizens who signed this contract could not have been heard to say that they had a parol understanding and were to be relieved from the daily payments at any time they desired, even though the plaintiff's plan should prove successful and he be able to deliver the amount of

water agreed upon. Such an understanding would have been directly repugnant to the written instrument, just as much so as the understanding that the plaintiff has sought to prove by his extrinsic evidence.

But the evidence introduced, and now complained of, had a bearing, not alone upon the duration of the contract, but was offered for the purpose of showing that, at the end of one year, the citizens signing the contract were expressly bound to purchase the plant at $3,000. Such an oral agreement would have been in direct contradiction to the express terms of the written instrument, for the written provision is that these parties shall have the "privilege" of purchasing the plant, and that the plaintiff shall sell to them "at any time." The contract gives them the privilege of purchasing, and the very grant of that privilege negatives any affirmative obligation on their part to purchase. Extrinsic evidence can never be admitted to prove a supplementary provision, inconsistent or in conflict with the expressed intention of the parties, as embodied in the written instrument. 22 C. J. 1290, sec. 1720.

Furthermore, we can see nothing ambiguous in the contract, providing that these citizens should have the privilege of purchasing. On the other hand, such a provision was entirely consistent with the idea that the citizens should thus be given the opportunity of bringing the performance of the contract to a close before its term would otherwise actually expire. It is only when there is uncertainty, indefiniteness, or ambiguity in a contract that it is open to construction, and it is only in such cases that the statute (Rev. St. 1913, sec. 7909) has been held to apply. *Campbell v. Hobbs,* 97 Neb. 833; *Hamilton v. North American Accident Ins. Co.,* 99 Neb. 579; *Richey v. Omaha & Lincoln Railway & Light Co.,* 100 Neb. 847; *Bank of Waverly v. Daily,* 103 Neb. 7.

Another reason would prevent the court from enforcing an oral agreement against all those citizens signing the contract. No attempt was made to show that more than a very few of the signers were aware of the alleged parol agree-

ment, upon which plaintiff relies. The written contract was circulated and signed by all of the other 54 citizens, who, so far as the evidence shows, were informed of nothing but what was contained in the written-instrument, and they, of course, would not be bound by an understanding or verbal agreement, unknown to them.

The contract, it appears to us, was one whereby the plaintiff was to receive $1 for each day that his plant was found capable of furnishing 250,000 gallons of water to the municipal wells, such daily payments to continue so long as the plaintiff was able to continue performance, provided, however, that the citizens, during the successful performance by the plaintiff, were given the privilege of bringing the contract to a close and of terminating the obligation to make daily payments by a purchase of the plant for $3,000. The contract, however, contained no compulsory requirement that they should make such purchase, and cannot be supplemented by extrinsic testimony to show that such was the agreement. Though the plaintiff is entitled to hold the defendants to the daily payments contracted, so long as he is able to perform, nevertheless, for a failure on their part to carry out their agreement, his remedy would be for damages growing out of that breach.

For the reasons given, it is our opinion that the judgment of the lower court must be reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.