ARMAND V. COX, APPELLEE, CROSS-APPELLANT, v. RALPH E. RIPPE, APPELLANT, CROSS-APPELLEE.

19 N. W. 2d 514

FILED JUNE 29, 1945. No. 31954.

*Stiner, Boslaugh & Stiner,* for appellant.

*Stewart, Stewart & Whitworth,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, CHAPPELL, and WENKE, JJ.

PAINE, J.

This is an equitable action by plaintiff upon contracts, partly oral and partly written, to recover his one-half of the net profits of the construction of two trailer camps for the Farm Security Administration. Defendant claimed that the action was prematurely brought and that he had made settlement in full. The trial court denied plaintiff part of the relief asked, and held that no partnership existed, but that plaintiff was entitled to an accounting, and that no settlement had been made, and that plaintiff was entitled to judgment for $21,794.58 and, in addition, to one-half of $18,891.98 still due from the government, if and when paid; denied plaintiff expenses of suit other than court costs, and denied plaintiff an attorney's fee. Motion for new trial being overruled, the defendant appealed.

Plaintiff alleged in his amended petition that on December 22, 1941, plaintiff and defendant entered into a contract to form a partnership to construct a trailer camp at Parsons, Kansas, for the Farm Security Administration of the United States Department of Agriculture, pursuant to a contract secured by defendant on December 16, 1941. A written portion of the contract between the plaintiff and defendant set out that the parties would, at the completion of the Parsons, Kansas, trailer camp, divide all profits equally after all costs and expenses had been deducted.

It was further alleged that plaintiff agreed to go immediately to Parsons, Kansas, and supervise the construction of the trailer camp and purchase materials therefor, and would receive $200 a month for his expenses, including the use of his automobile; that the parties were equal partners, and would share profits and losses equally; that the plaintiff would contribute $2,000 as the capital of the partnership and devote his time and effort to constructing said camp.

It is further alleged that the defendant has received $72,-423.22, and there is still due from the Administration the

sum of $5,985.78, and that the net profit realized from the payments already made by the Administration was $21,-516.90, one-half thereof being the plaintiff's share; that on May 6, 1942, a supplemental verbal contract was entered into between the parties to construct another trailer camp at Wichita, Kansas, and on June 16, 1942, a supplemental writing confirmed said verbal agreement, and in writing the parties agreed to divide any and all profits equally after the completion of said Wichita trailer park; that the total amount received by the defendant on said construction at Wichita amounted to $113,969.02 at the time of filing the amended petition, and there was still due from the Administration the sum of $13,773.72 on the Wichita contract; that the net profit realized therefrom is $36,891.36, of which sum the defendant has failed and refused to pay the plaintiff $14,305.82, together with $1,335.04 for his expenses, making a total sum now due plaintiff for the Wichita park construction the sum of $15,640.86, together with one-half of the balance to be received from the Administration. Plaintiff prays that the defendant be required to account to the plaintiff for the balance due him under the contract for cash advanced and share of the profits due the plaintiff.

Defendant in his answer admits that the parties signed the writings as alleged in the petition, and that plaintiff performed the work in the construction of the trailer camps, and that defendant paid plaintiff the sum of $10,000; denies that they ever at any time entered into a partnership; alleges that defendant has repeatedly requested a final accounting from the Administration, and that the final amount due has not been arrived at, and that there are damages and penalties because of the alleged delay in the completion of the work, and that the Administration asserts the right to re-negotiate the contract and demand and recover large sums from the defendant, which will probably result in much and expensive litigation before a final accounting and settlement is arrived at, and that because thereof any action by the plaintiff against the defendant for the purpose of recovering any part of any alleged net profit for said work

was and is, premature and cannot be maintained. Defendant prays that the petition be denied and dismissed and that the attachment and garnishment issued be discharged.

In his amended answer defendant alleges that plaintiff desired to withdraw from the work before the trailer camp had been completed at Wichita, and that there was a good-faith dispute between the parties, and the parties finally arrived at an understanding and agreement, by the terms of which the plaintiff agreed to accept the sum of $10,000 as an accord and satisfaction in full compromise settlement and discharge of all liability due plaintiff from defendant, and that the plaintiff received and accepted said sum of $10,000 and retained the same, and defendant is not now indebted to the plaintiff in any amount whatever, and prays that the petition be dismissed.

Thereafter a reply was filed to the amended answer, in which it is alleged that the final payment due from the Administration is delayed because of the failure of the defendant to furnish the papers which are required by the Administration before such final payments are made, and that the Administration has repeatedly requested defendant to furnish such papers; denies that there was any accord and satisfaction or compromise settlement made, and alleges that the $10,000 payment was simply a partial payment of a large amount then due from defendant to plaintiff.

There was a stipulation between counsel that this was an action in equity, and is at all times to be so considered by the parties and by the court. The trial was begun on January 19, 1944, and adjourned from time to time at the convenience of the parties, and the final evidence was taken June 20, 1944, and 30 days were given to submit briefs to the trial court. On August 1, 1944, the court reporter certified that he had completed the bill of exceptions, and the trial court had the benefit thereof and the briefs before deciding the case.

Thereafter on November 27, 1944, the decree was entered, in which the court found generally for the plaintiff and against the defendant, and found that a contract was

entered into for each of said projects, which contracts were partly oral and partly written; that a partnership was not entered into by the parties, but there was such an account between the parties as entitled the plaintiff to an accounting.

The court further found that the evidence did not sustain the contention of the defendant that the $10,000 paid to plaintiff on November 20, 1942, was made as part of an accord and satisfaction, but that in fact it was a partial payment of the amount due the plaintiff on the Parsons project; that there was due the plaintiff from the defendant $21,-794.58, with interest at 6 per cent, for which amount plaintiff was awarded judgment against defendant; that the balance due from the government on the Parsons project was $5,118.26, and that the balance due on the Wichita project was $13,773.72, and that if and when such amounts, or any part of them, are paid to the defendant by the government, one-half of the amount so received shall be paid by the defendant to the plaintiff.

The court further found that the amount of $20,602.95, paid to the clerk of the district court in the garnishment proceedings, should be paid by the clerk to the plaintiff to apply on the amounts found due the plaintiff, if no supersedeas bond was filed within 20 days, and that the sheriff of Adams county should recover and sell the property attached as upon execution and the amount so realized should be applied to the amount due plaintiff; that the defendant should pay the costs of this action, and supersedeas bond was fixed at $35,000, but the plaintiff was not entitled to expenses of suit other than court costs, nor to any fee for his attorney. Motion for new trial and supersedeas bond in the sum of $35,000 were duly filed by the defendant.

The defendant sets out as errors relied upon for reversal that the court erred in finding that the action was not prematurely brought, in finding that in the action there had not been an accord and satisfaction, nor a compromise settlement made and performed. Defendant further alleges that the court erred in adjudicating certain sums due the plaintiff

from the defendant, and that the clerk and the sheriff should apply certain sums to the payment of the plaintiff's judgment for the reason that such findings are contrary to the law and not supported by the evidence.

The defendant's brief sets out several propositions of law: First, that this action could not be maintained when the claim alleged was not due at the time the suit was instituted; second, that the claim made by the plaintiff was disputed and unliquidated; and third, that the compromise or accord and satisfaction of a disputed, unliquidated claim, which rests on sufficient consideration, is conclusive of the rights of the parties.

The evidence discloses that the plaintiff had been raised in Dallas, Texas, and had been in the contracting business for many years, and since 1935 had been employed by the Farm Security Administration as a contract engineer and as an area construction engineer. In the fall of 1941 he was engaged as the government's representative as contract engineer in the construction of trailer camps at San Diego, California. Plaintiff had been planning to leave the Administration and go into contracting himself.

The defendant was a heating and plumbing contractor at South Pasadena, California. He testified that he was 48 years old and had lived in California since 1927, had built barracks in Boulder City and a pumping station and office building for the Metropolitan Aqueduct at Hayfield and other points, and in the spring of 1941 had built his first trailer camp at San Miguel as a subcontractor; that on December 26, 1941, he was awarded the Parsons contract, and on June 2, 1942, received the Wichita contract.

Plaintiff and defendant first discussed the proposed construction of a trailer camp at Parsons, Kansas, after a dinner in Burlingame, California, at the apartment shared by plaintiff and H. P. Hallsteen, who was the district engineer for five states of the Farm Security Administration. Later, on December 6, 1941, in the office of the Farm Security Administration in San Francisco, in the presence of Mr. Hallsteen, the plaintiff and defendant looked over the plans and

specifications for the Parsons job, and after figuring it over decided that the job could be done with a profit of $27,500. Plaintiff testified that defendant then said, "You're with the government there, so I'll have to put the bid in in my name, and then if I get the bid, then you can resign and come on down and run the job." Defendant said that payment on his subcontracts had been coming in slowly and he did not have any money to put in the Parsons job, and the plaintiff agreed to put in $2,000 on the job to carry it until payments began to come through. Plaintiff also testified that defendant said that his bonding capacity was about used up, and plaintiff would have to go over to the bonding company and indemnify the bond, to which plaintiff replied that, as they were going into the contract on a 50-50 basis, he would go over and sign the bond.

Plaintiff came to Parsons and supervised the contract, and defendant remained busy on other jobs he had contracts for, having some 21 other jobs, and plaintiff says that defendant only came to Parsons on four occasions, staying only a day or so each time. The same facts were true of the Wichita contract, except that plaintiff went to Washington and defendant was on the project about ten days during the plaintiff's absence. Both contracts were entirely completed. There is evidence to the effect that the Parsons contract was completed April 29, 1942, and accepted as of May 7, 1942, and the Wichita contract completed between November 15 and November 30, 1942.

The report of one of the auditors testifying in the case is that the contract price of the Parsons project, including all change orders and extras finally made by the government, was $77,541.48 and the total expenses were $50,906.33, leaving a net profit, as per books of account, of $26,635.15; and on the Wichita job, $126,066.46, and deducting the total expenses leaves a net profit of $51,685.09, or the total rather remarkable net profits on the construction of two trailer camps of $78,320.24. Another auditor did not reach exactly the same identical totals.

The defendant has contended in every possible manner,

by his pleadings and his evidence, that this action was prematurely brought. Defendant insists that no settlement was due plaintiff until the very last check had been received by the government in final payment of each of these two contracts.

The time when the settlement was actually due is specifically set out in exhibit No. 2, which reads as follows:

"December 22, 1941

"It is understood and agreed that we the undersigned R. E. Rippe and A. V. Cox will at the completion of the PARSONS, KANSAS, being constructed for the Farm Security Administration, United States Department of Agriculture, shall divide all profits equally after all costs and expenses have been deducted.

"(Signed)        R. E. Rippe
                     R. E. Rippe

"(Signed)        A. V. Cox
                     A. V. Cox

"Witness:
"(Signed)        A. J. Rippe"
                A. J. Rippe

The evidence of plaintiff in reference to the preparation of exhibit No. 2 is this: "A. * * * And I said, 'Well, now, that we've got this job, we better draw up some agreement here on the participation of the profit on a 50-50 basis'; and he said, 'Well, that's all right.' I said, 'The reason I think we ought to, there's no telling what's liable to happen to either one of us; and, of course, the contract is in your name, and in order to protect us we ought to have that agreement.' And he said, 'That's fine,' and he called in his wife and she made out the agreement. * * * Q. Is that Mr. Rippe's signature above the typewriting 'R. E. Rippe'? A. Yes, sir. Q. And your signature above the typewriting 'A. V. Cox'? A. Yes, sir. * * * Q. And this writing was typed out by Mrs. Rippe? A. Yes. Q. And who told her what to put into the writing? A. Both Rippe and myself." It was

then signed in duplicate and witnessed, and each party received a copy thereof.

The written memorandum on the Wichita contract, being exhibit No. 6, is practically the same, and was signed June 16, 1942, and closes with the similar words, "divide any and all profits equally after all costs and expenses have been paid."

When a contract is partly written and partly oral, and the written portion thereof is clear, certain and definite, and where such written terms used have an apparent intent, then the evidence of parol statements or recollections of one of the parties contrary thereto and inconsistent therewith will not be permitted to overturn the clear, positive terms of the written portion of the contract, which has been duly signed by both parties and witnessed. See *Smith v. Bailey*, 105 Neb. 754, 181 N. W. 926.

"In construing a paragraph of a contract which is in dispute, the court must endeavor to place itself in the position of the parties, and ascertain their intention, as well as the object and purpose to be accomplished by the doubtful provision, and interpret it in the light of the actual facts and circumstances surrounding them at the time it was made." *Lyman-Richey Sand & Gravel Co. v. State*, 123 Neb. 674, 243 N. W. 891.

The court is of the opinion that, according to the terms of the two written memoranda signed by the parties, the right accrued to the profits from each of said contracts immediately after the work had been completed and the costs and expenses paid. Therefore, the action was not prematurely brought, because it was begun long after both of the projects had been completed as per the terms of their written memoranda.

We will now take up the second error relied upon by defendant for a reversal and argued at length in the brief: "The court erred in finding and adjudicating that there had not been an accord and satisfaction or a compromise settlement made and performed by the parties hereto."

The defendant made strenuous and repeated oral claims

that the payment to plaintiff on November 20, 1942, of $10,-000 was accepted by plaintiff as a complete accord and satisfaction and compromise settlement of all claims the plaintiff had against the defendant.

While large payments were being received by defendant from the government as the work progressed, still defendant refused all requests of plaintiff to divide up these payments, even after all costs and expenses had been paid, and the payments represented clear profits which were to be divided equally between the parties.

Plaintiff insisted that these payments being received represented profits, which defendant denied, and rather heated disputes occurred, defendant finding fault with the conduct of plaintiff and finally discharging him. Defendant endeavored to show that he settled the contract in full between them by the payment of this small sum of $10,000, the same being shown by exhibit No. 52, a check, No. 203, dated November 20, 1942, for $4,000, drawn on The Fourth National Bank of Wichita to the order of A. V. Cox, signed by R. E. Rippe, and exhibit No. 25, between the same parties, bearing the same date, but being check No. 190, drawn on the United States National Bank, of Denver, Colorado, for the sum of $6,000. No such claim was made by the defendant of the alleged compromise settlement in his original answer, but this is first found as an allegation in the amended answer.

The plaintiff denies positively that there was any settlement made. The defendant's bookkeeper, McBeth, who was present at conversations between the two men on this occasion and who wrote out the $4,000 check at defendant's direction and gave it to plaintiff, testified that he did not hear the defendant state at any time that the $10,000 paid that day was to be in settlement of plaintiff's share of the profits on either the Parsons job or the Wichita job, or both of them.

There was plenty of room on each of these two checks to have inserted that such check was in full of a compromise settlement of the entire claim of plaintiff, but nothing to

that effect appeared on either of the checks or on the stubs from which they were taken.

The burden of proof to maintain an alleged accord and satisfaction was upon the defendant as the party seeking to enforce it. See *McKinnon v. Holden*, 85 Neb. 406, 123 N. W. 439.

To meet this burden of proof, there should first be shown the meeting of the minds of the parties to the accord and satisfaction, accompanied by a proper and sufficient consideration upon which the accord and satisfaction was based, together with proof of the acceptance by the other party.

In our opinion, the claim that the $10,000 paid November 20, 1942, was a full and complete compromise settlement between these parties is not supported by any evidence except the oral statements of defendant, and entirely falls.

The plaintiff cross-appeals from the decree because of the failure of the trial court to include in the judgment one-half of the final payments to be received, but the decree as entered provided as to payments not received by the defendant when the amended petition was filed: "The defendant is hereby ordered to pay to plaintiff one-half of the balance of $5,118.26 due from the government on the Parsons project and one-half of the balance of $13,773.72 due from the government on the Wichita project if and when those amounts or either of them or any part of them are paid to the defendant by the government."

In our opinion, this is a sufficient judgment upon which plaintiff can enforce his ownership of one-half of such delayed payments, and it was not necessary for the decree to require defendant to execute an assignment thereof.

Finding no reversible or prejudicial error in the record, the judgment of the trial court is hereby affirmed.

AFFIRMED.

MESSMORE, J., concurring separately.

I separately concur with the majority opinion, but after a careful analysis of the record, my impression is that the use of the word "remarkable" profit should be "unconscionable" profit, and if contracts of this nature are permitted to

continue with such profits, which means in the last analysis the making of the rich over-night, practically speaking, then the future is without color in discerning the sacrifices made by those who constitute the great volume of the citizenship of this country.

This concurrence is merely a recognition of the high principles of constitutional government for which the youth of America have died, and the full purpose of this concurrence is to call attention to the woeful waste of the resources of this nation, and the lightness with which some government officials view the concept of this great and desperate global war.