LONE CEDAR RANCHES, INC., A NEBRASKA CORPORATION, AND
BILL HARTNELL, APPELLANTS, V. D.B. JANDEBEUR AND THE
JANDEBEUR COMPANY, A NEBRASKA CORPORATION, APPELLEES.

523 N.W.2d 364

Filed November 4, 1994.   No. S-93-289.

George G. Vinton for appellants.

John A. Gale, of McCarthy, Gale & Moore, for appellees.

HASTINGS, C.J., WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ., and BOSLAUGH, J., Retired.

CAPORALE, J.

## I. STATEMENT OF CASE

The plaintiffs-appellants producers, Lone Cedar Ranches, Inc., a Nebraska corporation, and Bill Hartnell, seek an accounting and damages under a farming contract with the defendants-appellees landowners, D.B. Jandebeur and The

Jandebeur Company, a Nebraska corporation. Jandebeur and The Jandebeur Company counterclaimed, seeking damages for breach in the performance of the contract and postcontract arrangements, and to have a thresher's lien filed by Hartnell declared void. The district court entered judgment in the amount of $6,125 in favor of Lone Cedar Ranches, to be offset against a judgment in the sum of $25,496.10 in favor of Jandebeur, for a net judgment in his favor of $19,371.10, and declared the thresher's lien to be void. The producers appealed, asserting, in summary, that the evidence failed to sustain the district court's findings that (1) The Jandebeur Company had no liability; (2) an accord and satisfaction had been reached by the parties as to the contract; (3) the contract had not been extended; (4) the annual accounting required by the contract had been postponed; (5) the reasonable value of the farming services performed during the postcontract period and the amount paid therefor were as determined; (6) the crop yields during the postcontract period, the values thereof, and the resulting losses were as determined; and (7) the thresher's lien was void. We, on our own motion, removed the matter from the Nebraska Court of Appeals to this court in order to regulate the caseloads of those courts and now affirm the judgment of the district court.

## II. SCOPE OF REVIEW

The producers have asked that we review this matter de novo on the record. Despite the fact that in many contexts the traditional distinctions between law and equity have been abolished, whether an action is one in equity or one at law controls in determining an appellate court's scope of review. In an appeal in equity, the reviewing court tries factual questions de novo on the record. In contrast, the factual findings of the trial court in an action at law in which the jury is waived have the effect of a verdict and will not be set aside unless clearly wrong. *Waite v. A. S. Battiato Co.*, 238 Neb. 151, 469 N.W.2d 766 (1991).

An action for an accounting may under one set of circumstances find its remedy in an action at law and under another find it within the jurisdiction of equity. *Id.* A suit for

declaratory judgment is an action sui generis and may involve questions of law or equity or both; whether a declaratory judgment action is treated as an action at law or one in equity is to be determined by the nature of the dispute. *Id.*; *Jelsma v. Colonial Penn Ins. Co.*, 232 Neb. 49, 439 N.W.2d 479 (1989). When the essence of the dispute sounds in contract, the action is to be treated as one at law. *Waite, supra*; *Union Ins. Co. v. Bailey*, 234 Neb. 257, 450 N.W.2d 661 (1990).

Although the producers have asked for an accounting, we must consider the nature of the underlying dispute to determine whether this is an action at law or in equity. Generally, in order to be entitled to the equitable remedy of accounting, it is necessary to allege a fiduciary, trust, or confidential relationship; a complicated series of accounts; or the inadequacy of a remedy at law, the latter being the basic reason for asserting equitable jurisdiction. See *Trump, Inc. v. Sapp Bros. Ford Center, Inc.*, 210 Neb. 824, 317 N.W.2d 372 (1982). On the other hand, an accounting action at law is based upon a contract, express or implied. *Harmon Care Centers v. Knight*, 215 Neb. 779, 340 N.W.2d 872 (1983). For an action for a legal accounting to lie, it must appear that the defendant has received property or money not belonging to him or her, for which he or she is bound to account to the plaintiff, and that the plaintiff is the owner of such property or money. *Id.*

The controlling petition filed by the producers does not contain allegations of a fiduciary, trust, or confidential relationship; a complicated series of accounts; or the inadequacy of a remedy at law. Rather, their action sounds in contract, claiming, in part, that the landowners have received money which belongs to the producers for which the landowners must account.

It is true that the landowners sought to have the thresher's lien filed by Hartnell under the provisions of Neb. Rev. Stat. § 52-501 (Reissue 1993) declared void and that an action to foreclose a lien is grounded in equity, see *DeMoor v. DeMoor, ante* p. 765, 523 N.W.2d 361 (1994), and *McCook Nat. Bank v. Myers*, 243 Neb. 853, 503 N.W.2d 200 (1993). However, the allegations of a petition establish the essential character of a cause of action and the remedy or relief it seeks and thus

determine whether a particular action is one at law or in equity, unaffected by the conclusions of the pleader or what the pleader calls it. See *White v. Medico Life Ins. Co.*, 212 Neb. 901, 327 N.W.2d 606 (1982). Here, the landowners ask not that the lien be foreclosed, but only that it be declared void because they owe no money. Thus, the essence of the dispute in the instant case sounds in contract. The action is therefore one at law tried without a jury.

Consequently, not only do the findings of the district court have the effect of a verdict, the evidence must be considered in the light most favorable to the landowners as the successful parties, conflicts must be resolved in their favor, and they are entitled to the benefit of every inference which can reasonably be deduced from the evidence. See *White, supra.*

## III. BACKGROUND

So viewed, the evidence is that Jandebeur is a resident of Oklahoma, who owned farmland in Lincoln County, Nebraska. On April 8, 1986, he and Hartnell entered into a written contract, under the terms of which Hartnell was to operate the farm and be responsible for tilling, plowing, cultivating, fertilizing, irrigating, harvesting, and maintaining the crops in a "workmanlike" manner. In addition, Hartnell was to furnish all machinery, fuel, and labor required to maintain and harvest the crops. The contract also provided that Hartnell was to plant corn and such other crops as he and Jandebeur agreed. In accordance with its terms, the contract had been extended by written notification from year to year through 1989. According to Jandebeur, The Jandebeur Company "took over [his] position" in 1989 or 1990.

Under the contract, Hartnell was to receive from Jandebeur $50 per acre for each acre of irrigated corn and 40 percent of any net profit computed as the contract specified. Shortly after signing the contract, Hartnell, without obtaining Jandebeur's required written consent, assigned it to Lone Cedar Ranches, a corporation formed by his mother.

Inasmuch as the landowners have not cross-appealed the district court's finding that the judgment in Jandebeur's favor operates only against Lone Cedar Ranches, we do not concern

ourselves with the validity of the assignment. We also assume, as the district court apparently did, that whenever Hartnell acted, he did so as an agent of Lone Cedar Ranches. And because The Jandebeur Company has not cross-appealed the district court's failure to enter judgment in its favor, neither do we concern ourselves with that matter.

In any event, Jandebeur became dissatisfied with Hartnell's performance and terminated the contract in August 1989. Jandebeur then agreed to let Hartnell work on the 1989 harvest and to compensate him for operating Jandebeur's combine, Hartnell having lost his because he was unable to make the payments.

Jandebeur also agreed to let Hartnell farm the fields in 1990 with the understanding that Hartnell would put forth his best efforts, agreeing further that Hartnell would charge a reasonable per-acre rate for each service rendered. According to Jandebeur, this postcontract arrangement was not intended to renew the prior contract, and there was no discussion concerning the sharing of postcontract profits.

## IV. ANALYSIS

With that background, we turn our attention to the producers' assignments of error, setting forth such additional facts as are relevant to the resolution of each assignment.

### 1. NONLIABILITY OF THE JANDEBEUR COMPANY

The first assignment of error complains of the district court's failure to make its judgment in favor of the producers run against The Jandebeur Company as well as against Jandebeur. But because the net judgment is such that it is Lone Cedar Ranches which must pay Jandebeur, the matter is of no consequence, and we therefore need not and do not resolve it.

### 2. ACCORD AND SATISFACTION

In the second assignment of error, the producers assert that the district court erred in finding that there had been an accord and satisfaction of their claims arising out of the contract.

In August 1989, Jandebeur concluded that Hartnell had breached his contractual promise to properly plant and maintain the irrigated corn crop. Hartnell admitted that he

planted the corn late, failed to plant other crops the parties had agreed should be planted, and failed to properly irrigate the corn. The record also establishes that by August 1989, no profits had been distributed to Hartnell because the corn had not been sold, but, rather, had been stored in a federal program for sale at a later, more propitious time. According to Jandebeur, Hartnell acknowledged that "we blew any profit" accrued in the previous years, and they both agreed that any potential profit which had accumulated would be offset by the 1989 loss. According to Jandebeur, he told Hartnell that the contract was terminated and that he, Jandebeur, was going to pay $1,000 and "that's it."

An accord and satisfaction is a discharge of an existing indebtedness by the rendering of some performance different from that which was claimed as due and the acceptance of such substituted performance by the claimant in full satisfaction of the claim. *Mackiewicz v. J.J. & Associates*, 245 Neb. 568, 514 N.W.2d 613 (1994). To constitute an accord and satisfaction, there must be (1) a bona fide dispute between the parties, (2) substitute performance tendered in full satisfaction of the claim, and (3) acceptance of the tendered performance. *Id*. The burden of proof to maintain an alleged accord and satisfaction is on the party seeking to enforce it. *Cox v. Rippe*, 146 Neb. 309, 19 N.W.2d 514 (1945); *McKinnon v. Holden*, 85 Neb. 406, 123 N.W. 439 (1909). To meet this burden of proof, it is first to be shown that the minds of the parties to the accord and satisfaction met. See *Cox, supra*.

The key element of accord and satisfaction is the intent of the parties, which, although as a general rule presents a question of fact, becomes a question of law when the evidence creates no conflict as to intent. *Mahler v. Bellis*, 231 Neb. 161, 435 N.W.2d 661 (1989).

Although the evidence clearly establishes that Hartnell accepted the $1,000 payment from Jandebeur, the parties presented conflicting evidence as to whether they agreed that Hartnell would forgo any claim for profits in exchange for Jandebeur's waiving any claim for damages to the 1989 corn crop. Therefore, the intent of the parties was a question of fact for the trial court as the trier of fact to resolve.

There also exists evidence supporting a finding that a bona fide dispute existed, as Jandebeur had a claim for damages resulting from Hartnell's breach of the contract, and Hartnell had a claim for undistributed profits.

Thus, the district court's finding that there had been an accord and satisfaction is supported by the evidence.

However, the producers also argue that even if so, the accord and satisfaction must be set aside because of mistake or because Jandebeur misrepresented the profits. The short answer to this argument is that the producers alleged no mistake or fraud.

The record therefore fails to sustain the second assignment of error.

### 3. NONEXTENSION OF CONTRACT

In the third assignment of error, the producers complain of the district court's determination that the 1986 contract was not extended to cover 1990.

But the evidence clearly supports such a finding. Not only did Jandebeur testify that the contract was not extended to cover 1990, Hartnell testified that although he had in the past received written extensions of the contract every year from 1987 through 1989, he did not receive any written extension for the year 1990. Moreover, Hartnell testified that he and Jandebeur discussed a purely fee-for-services arrangement for 1990.

Thus, this assignment of error also fails.

### 4. ACCOUNTING

The foregoing resolutions of the second and third assignments of error necessarily mean that the fourth assignment of error must also be resolved against the producers. The contract not having been extended and an accord and satisfaction having been reached in satisfaction of it, there is no basis for a further accounting under the contract. Because, for the grounds set forth later in subpart 6, we conclude that there were no postcontract profits, there is, for that reason, if for no other reason, no basis for any postcontract accounting.

### 5. VALUE OF POSTCONTRACT SERVICES

Next, the producers contend in the fifth assignment of error

that the evidence fails to support the trial court's determination that the value of the services rendered during the postcontract period was but $35 per acre for the 315 acres involved and that Hartnell had been paid $4,900 for those services.

Although there was countervailing evidence, there was testimony that because Jandebeur provided the combine, the fair and reasonable value of the services was $35 per acre. Jandebeur introduced into evidence canceled checks showing he had paid $4,900 for the services.

As it was for the trier of fact to determine how to evaluate the conflicting evidence, the record supports the district court's findings that the total value of the services was $11,025, toward which $4,900 had been paid, leaving a balance due of $6,125.

Consequently, the fifth assignment of error fails.

### 6. VALUE OF POSTCONTRACT CROP YIELDS

In the sixth assignment of error, the producers complain of the district court's findings that (a) the corn yield was such that Jandebeur suffered a $25,496.10 loss, (b) Jandebeur owed nothing for the sunflowers the producers planted, and (c) Jandebeur owed nothing for the acres he set aside.

We begin this aspect of our analysis by recalling that one injured by a breach of contract is entitled to recover all one's damages, including the gains prevented as well as the losses sustained, provided the damages are reasonably certain and such as might naturally be expected to follow the breach. *Katskee v. Nevada Bob's Golf of Neb.*, 238 Neb. 654, 472 N.W.2d 372 (1991); *Buell, Winter, Mousel & Assoc. v. Olmsted & Perry*, 227 Neb. 770, 420 N.W.2d 280 (1988). While it is true that such damages need not be proved with mathematical certainty, neither can they be established by evidence which is speculative and conjectural. *Katskee, supra*; *Buell, Winter, Mousel & Assoc., supra*. Loss of prospective profits may be recovered if the evidence shows with reasonable certainty both its occurrence and the extent thereof. Uncertainty as to the fact of whether damages were sustained at all is fatal to recovery, but uncertainty as to amount is not if the evidence furnishes a reasonably certain factual basis for computation of the probable loss. *Id.*

### (a) Corn Yield

Although Hartnell testified he could not irrigate optimally during the postcontract period because of a program requiring the discontinuance of electricity use during peak periods, there is evidence not only that the producers did not irrigate as they could and should have, but that they planted the corn late, did not chemically treat it in time, and tasseled it later than usual.

There is also evidence that as a result of the poor performance by the producers, the crop produced at least $24,186.50 less than it should have.

### (b) Sunflower Crop

Hartnell testified that he planted approximately 1,000 pounds per acre of sunflowers during the postcontract period. However, there was independent testimony that the sunflowers were "quite short" and "seemed quite lacking" and that "there was a lot of room in between the plants." Jandebeur testified that the sunflower crop was "just left to go to weeds" and was so poor that Hartnell made no effort to combine it.

### (c) Set Aside

Jandebeur testified that he was required to have some acres "set aside" to participate in a government program, being obligated to "keep the weeds down" and maintain a cover crop. However, Hartnell never planted anything or otherwise took care of the set-aside acres.

### (d) Resolution

Under this state of the record, it cannot be said the district court erred in finding as it did with regard to these issues, and, thus, the sixth assignment of error fails as well.

### 7. VOIDNESS OF LIEN

Next, the producers assert the district court was mistaken when it ruled that the thresher's lien Hartnell filed was void as a matter of law.

Section 52-501 provides in relevant part:

> The owner or operator of any threshing machine or combine used in threshing, combining, or hulling grain or seed . . . shall have and hold a lien upon such grain, seed, or corn which he or she shall thresh, combine, hull, pick,

husk, or shell with such machine or machines to secure the payment to him or her by the owner of such grain, seed, or corn of such charges for such threshing, combining, hulling, picking, husking, or shelling as may be agreed upon or, if no charges are agreed upon, for such charges as may be reasonable for such threshing, combining, hulling, picking, husking, or shelling.

Thus, either an owner or an operator of a combine could hold a lien to secure payment for unpaid services related to combining. However, Jandebeur testified that Hartnell did not participate in the harvest to the extent that he was owed any compensation. Unfortunately, as Jandebeur also testified that he and Hartnell combined for other farmers with whom Hartnell had contracted, it is unclear whether Jandebeur was referring to the operation of the combine for his own corn crop or the harvest of a third party's crop. But any claim the producers had for unpaid services during the postcontract period was offset by the judgment against Lone Cedar Ranches for the value of the lost yield. Consequently, neither of the producers could have a claim on any grain or the proceeds therefrom. The lien is, as the district court found, void.

As a consequence, the seventh and last assignment of error fails.

## V. JUDGMENT

The record failing to sustain any of the assignments of error, the judgment of the district court is, as first noted in part I above, affirmed.

AFFIRMED.