VIRGINIA T. HANZLIK, APPELLANT, V. FREDERICK F. PAUSTIAN, APPELLEE.

344 N.W.2d 649

Filed February 24, 1984.   No. 83-295.

Jon B. Abbott, for appellant.

Thomas J. Shomaker of Sodoro, Daly & Sodoro, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

The plaintiff has appealed an order of the district court granting the defendant's motion for summary judgment.

This case appears here for the second time.  The previous case, one involving alleged medical malpractice, appears under the same title at 211 Neb. 322, 318 N.W.2d 712 (1982), wherein the factual background is set forth.  We reversed the granting of defendant's motion for summary judgment.

By way of review we would note that in the previous case we held that whether a specific manner of treatment or exercise of skill by a physician demonstrates a lack of skill or knowledge, or a failure to exercise reasonable care, is a matter that must usually be proved by expert testimony.  We further pointed out that in a case such as this, where the de-

fendant is the moving party, such party must make a prima facie showing of the absence of negligence before the burden of producing evidence shifted to the plaintiff.

In that earlier case we determined that the defendant, Dr. Paustian, in his deposition explained the surgical procedures followed by him and detailed the possible consequences which might be expected therefrom, but concluded that "nowhere do we find any evidence that such procedures met the accepted standards of reasonable medical care." *Id.* at 327, 318 N.W.2d at 716.

On remand to the district court the defendant again filed a motion for summary judgment, supported by his affidavit that "he followed the generally accepted and recognized standard of care or skill of the community or similar communities in the use of the dilitation [sic] procedure." That evidence satisfied our requirement that the moving party must make a prima facie showing of the absence of negligence. To meet her burden of producing evidence of negligence on the part of the defendant as referred to above, the plaintiff submitted the affidavit of her trial attorney.

As recited in her brief, that portion of the affidavit which the plaintiff argues establishes evidence of negligence on the part of the defendant refers to two entries made by the defendant in the "Doctor's Orders and Progress Notes" taken from the hospital records. A portion of the entries made on August 22, 1974, include "ō subcut. emphysema. A-1) Mucosal tear s̄ evidence infection." In his affidavit plaintiff's counsel interprets those entries as follows: "ō (some degree) subcut(aneous) emphysema. A-1) Mucosal tear s̄ (without/or some) evidence infection." However, the glossary of abbreviations and symbols, the source of which is not shown, attached to the affidavit reveals that the symbol s̄ means "without."

Counsel then argues that the defendant had testified in his deposition that the dilation procedure

would be terminated upon there appearing evidence of a rupture of the esophagus and that a rupture is conclusively evident upon finding evidence of subcutaneous emphysema.

The deposition testimony alleged to support the conclusion that the dilation procedure would be terminated upon there appearing evidence of a rupture of the esophagus may be summarized as follows: The defendant testified that, generally speaking, dilation procedures are terminated if there is concern about a rupture, even though it may be only on a temporary basis. Serial blood counts and X-rays are then obtained.

There is no indication in the records that these latter procedures were carried out on August 22 or before the next dilation, which was accomplished on August 23. However, an esophagram study, a barium X-ray to determine any possible disruption of the integrity of the esophageal wall, was carried out on August 23, following dilation. This indicated a mucosal irregularity as of a superficial tear, but disclosed no evidence of any compromise of the integrity of the wall of the esophagus.

In support of her argument that a rupture of the esophagus would be conclusively evident upon a finding of subcutaneous emphysema, plaintiff cites additional deposition testimony of the defendant. The defendant did describe subcutaneous emphysema as an accumulation of air beneath the skin. He went on to say that a very distinctive sign of a perforation of the esophagus is a so-called mediastinal emphysema, which means an accumulation of air within the tissues of the mediastinum. Signs of such a condition include the sound of a mediastinal crunch, which is detected by the use of a stethoscope; and a fair inference may be drawn from the defendant's testimony that such a procedure was carried out.

The defendant agreed that a tear in the esophagus may involve swelling in the tissues of the neck, which was not present in this case. Finally, ac-

cording to the deposition, a superficial tear of the mucosa would not necessarily involve a weakening of the esophageal wall. But if there was a disruption of the muscle coat such that there was communication between the lumen of the esophagus and the surrounding mediastinal tissues, then it would be justified to suspect the development of a mediastinal emphysema problem. In such a case one might very well expect an infection within those tissues, and no infection was found.

The affidavit then concludes with the following recitation: "C) that Defendant failed to terminate procedures on the 22nd and treat conservatively with antibiotics, especially Clendamycin [sic], the most powerful and least used (toxic) except in life threatening situations; but rather waiting, did not employ it until it was too late on August 25th, the day of major surgery to save Plaintiff's life.

"16. That experts are available and will testify, verifying the facts herein, upon being subpoenaed; the trial of this case being specially set on a day certain far enough in the future to ensure their appearance; that the Defendant by affidavit, filed January 12, 1983, has admitted that the procedures he employed are 'the generally accepted and recognized standard of care or skill of the community or similar communities in the use of the dilitation [sic] procedure'; but Defendant has not denied negligence in the use of non-dilitation [sic] procedures."

The various statements and conclusions offered by the plaintiff's counsel in his affidavit are attempts by a lay witness to interpret medical testimony and arrive at conclusions as to the possible negligence of a physician and surgeon. We adhere to the rule expressed in our former opinion, *Hanzlik v. Paustian*, 211 Neb. 322, 318 N.W.2d 712 (1982), that this must be proved by expert testimony.

We do not agree with counsel's conclusion that "Defendant has not denied negligence in the use of non-dilitation [sic] procedures." In his affidavit the

defendant states "that based upon his personal knowledge and experience as a specialist in the practice of gastroenterology, he denies any negligence on his part in his treatment of Plaintiff." Furthermore, he stated "that he followed the generally accepted and recognized standard of care or skill of the community or similar communities in the use of the dilitation [sic] procedure." This is the approved test for determining whether a physician was negligent in the performance of medical services. *Kortus v. Jensen*, 195 Neb. 261, 237 N.W.2d 845 (1976).

We believe that the defendant has now made a prima facie showing that he would be entitled to a judgment if the evidence were uncontroverted at trial, as required by our former opinion in *Hanzlik*. Therefore, "Summary judgment should be granted to the movant unless the opposing party offers *competent evidence* . . . that there is a genuine issue as to a material fact." (Emphasis supplied.) *Hanzlik* at 328, 318 N.W.2d at 716.

A conclusionary statement of alleged facts made by a nonexpert witness as to the care, skill, or diligence exercised by one in the treatment of a medical condition, to be verified by unidentified experts at the time of trial, does not fulfill the plaintiff's burden of establishing a genuine issue of a material fact. *Hanzlik v. Paustian, supra.*

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Neb. Rev. Stat. § 25-1334 (Reissue 1979).

" 'Under this provision [Fed. R. Civ. P. 56(e)], therefore, statements in affidavits as to opinion, belief, or conclusions of law are of no effect. The same is true of summaries of facts or arguments, and of statements which would be inadmissible in

evidence * * *.' "  *Eden v. Klaas*, 165 Neb. 323, 328, 85 N.W.2d 643, 646 (1957).

"An affidavit opposing the rendition of a summary judgment, to be effective, must be made on personal knowledge, must set forth such facts as would be admissible in evidence in detail and with precision, and must show affirmatively that the affiant is competent to testify to the matters stated therein." *In re Freeholders Petition*, 210 Neb. 583, 589, 316 N.W.2d 294, 298 (1982).

The judgment of the district court in granting summary judgment was correct and is affirmed.

AFFIRMED.