JOHN D. HASSETT, APPELLANT, V. SWIFT & COMPANY, A
DELAWARE CORPORATION, APPELLEE.

388 N.W.2d 55

Filed May 30, 1986.    No. 85-200.

Cynthia G. Irmer of Matthews & Cannon, P.C., for appellant.

Robert L. Berry of Kennedy, Holland, DeLacy & Svoboda, for appellee.

BOSLAUGH, HASTINGS, CAPORALE, and GRANT, JJ., and BRODKEY, J., Retired.

BRODKEY, J., Retired.

Plaintiff below, John D. Hassett, appeals to this court from an order entered by the district court for Douglas County, Nebraska, sustaining a motion filed by the defendant for summary judgment in a breach of contract action brought by the plaintiff. We affirm.

The object of this litigation is the construction of an alleged oral agreement between the parties whereby the plaintiff, who was an employee of the defendant, having first entered its employment in September 1947, had terminated that employment and had gone to work for another company in August 1964. He returned to work for defendant on February 8, 1965, at the request of his former supervisor, and under an alleged promise by that supervisor that the 5-month period would be "bridged" for the purposes of computing his pension with defendant, Swift & Company.

In his amended petition filed in the district court, plaintiff alleged that the oral agreement between the parties was valid and binding and that under its terms the defendant had no right to disallow plaintiff's service with defendant from 1948 to 1964

in computing his pension, and prayed that the court determine the amount of money due the plaintiff from the defendant.

Although the defendant in its answer sets forth various and sundry defenses, the main thrust of its answer is that any cause of action alleged by the plaintiff in his amended petition would be barred by applicable statutes of limitations and, also, as alleged in its answer, that the petition failed to state a cause of action upon which relief could be granted. Defendant also asserts that plaintiff was aware not later than September 5, 1967, that the gap in his service would not be bridged and that his retirement could and would only be computed on the basis of his service commencing on the date of his rehiring, to wit, February 8, 1965.

At this point the defendant filed a motion for summary judgment, at the hearing of which the trial court found that it was possible but unlikely that a contract to bridge Hassett's services existed. The trial court further stated that even if a contract existed, a breach occurred no later than September 5, 1967; hence, it was clear that any action was barred by the statute of limitations. The trial court reasoned that as no issue existed regarding the statute of limitations, the defendant was entitled to judgment as a matter of law, and thereupon sustained defendant's motion for summary judgment.

The plaintiff then filed his motion for a new trial, which was overruled by the court. He then perfected his appeal to this court.

In his brief on appeal the appellant assigns as errors that the district court erred in holding that the statute of limitations began to run against his claim against the appellee in 1967, in granting summary judgment although many issues of material fact yet existed, and in dismissing appellant's action.

By way of factual background to the present litigation, the record reveals that Hassett began working for Swift & Company on September 8, 1947, and that on August 29, 1964, he voluntarily resigned his position as assistant sales manager with that company and went to work for another company at an increase in pay. A short time later, a discussion occurred between Hassett and C. J. Kleeman, who was the city sales manager for Swift & Company in Omaha at that time. Hassett

testified that Kleeman discussed the possibility of Hassett's returning to work for Swift & Company and stated that Kleeman promised him that if he returned to Swift, "nothing will have changed. It would be just like you had not ever left the company. . . . [Y]our years would be bridged . . . ." Hassett testified that he believed that Kleeman had the necessary authority to verbally finalize the bridging issue and that Kleeman's statements superseded those printed in the company's pension plan booklet. Hassett received no written promise from Kleeman or any other employee of Swift & Company.

The Swift & Company pension trust as amended to April 1, 1961, was the pension plan which was in effect when Hassett left Swift. The plan specifically provided that "[t]he service to be taken into account in computing the amount of an employe's pension shall be *the last continuous period of service* of the employe . . . ." (Emphasis supplied.) The administration of the pension trust was vested in the pension board. There was no provision for "bridging" the service of a former employee of Swift & Company. Hassett had received the booklet describing Swift's pension plan.

Before a former employee such as Hassett could be rehired, it was necessary to obtain the approval of the local plant manager and the general sales department in Chicago. A memorandum dated December 18, 1964, written by H.B. Bartleson, of Swift's general sales department, to K.M. Coughenour, the Omaha plant manager, stated the conditions under which Hassett could be rehired. The conditions were that Hassett would begin strictly as a new employee and that there would be no possibility whatsoever of bridging Hassett's service. The memorandum also stated that Hassett "should be given no encouragement that [bridging] will be considered at a later date."

On February 8, 1965, Hassett was rehired by Swift. The pension plan then in effect was the Swift & Company pension trust as amended to February 1, 1965. This document specified that an employee who quit would lose all accumulated credited service except for the purpose of determination of any pension, immediate or deferred, to which the employee might then be entitled. The document further provided specifically that if an

employee were "subsequently re-employed, no credit [would] be given for prior service."

After Hassett's reemployment he persisted until the early 1970s in pursuing the bridging issue with Kleeman as well as with several other Swift managers. Hassett received only negative responses. One response was a memorandum dated September 5, 1967, which was dictated in Hassett's presence, from B.A. Balgus, the plant manager, to R.E. Rogers, of the general sales department in Chicago. This memorandum, a copy of which was received by Hassett, stated that Balgus had informed Hassett that day that Hassett's service would not be bridged.

In August 1981 Hassett was informed that his position with Swift would be terminated effective December 1, 1981, because Swift was changing to distribution through food brokers and the sales department was being eliminated.

On September 25, 1981, Thomas Fogarty, the regional sales manager from Chicago, and J.A. Hansen, Swift's district manager, met with Hassett and again informed him that his service would not be bridged. On November 14, 1981, Hassett wrote to Hansen requesting his consideration of the bridging issue. R.B. Greene, Swift's vice president of personnel, replied on November 23, 1981, again stating that Hassett's service would not be bridged, and referred to the Balgus memorandum of September 5, 1967.

The law regarding summary judgments in Nebraska is well settled. A summary judgment may be rendered if the pleadings, depositions, admissions, and affidavits together reveal that there is no genuine issue as to any material fact, that the ultimate inferences to be drawn from those facts are clear, and that the moving party is entitled to judgment as a matter of law. Neb. Rev. Stat. § 25-1332 (Reissue 1985); *Yankton Prod. Credit Assn. v. Larsen*, 219 Neb. 610, 365 N.W.2d 430 (1985).

Summary judgment is an extreme remedy and its purpose is to "pierce sham pleadings and to dispose of cases in which there is no genuine claim or defense." *Hanzlik v. Paustian*, 211 Neb. 322, 326, 318 N.W.2d 712, 715 (1982), *aff'd on remand* 216 Neb. 575, 344 N.W.2d 649 (1984), *cert. denied* 469 U.S. 854, 105 S. Ct. 179, 83 L. Ed. 2d 113 (1984). We, as well as the lower

court, in deciding if any real issue of fact exists, are required "to take the view of the evidence most favorable to the party against whom the motion is directed and give that party the benefit of all favorable inferences which may reasonably be drawn from the evidence." *Yankton, supra* at 614, 365 N.W.2d at 433.

Applying this test and viewing the evidence most favorably to the plaintiff, we find there is no genuine issue of material fact.

Hassett argues that the district court disregarded certain factual issues, most importantly whether a contract existed. It is quite apparent from the evidence which has been discussed that Kleeman, the city sales manager in Omaha, had no authority, actual or express, to bind Swift & Company by a promise to Hassett that if he returned to work, his service would be bridged. Kleeman, in fact, had no authority to rehire Hassett without obtaining approval from the local plant manager and the general sales department in Chicago.

In an effort to avoid that problem, Hassett argues that Kleeman had apparent authority to bind Swift & Company to such a contract. Apparent authority or agency for which a principal may be liable must be traceable to him and cannot be established by the acts, declaration, or conduct of an agent. *Wolfson Car Leasing Co., Inc. v. Weberg*, 200 Neb. 420, 264 N.W.2d 178 (1978).

There is nothing in the record to support a finding that a genuine issue of material fact exists as to the apparent authority of a city sales manager to promise to vary or waive a provision in the corporation's employee pension plan. Kleeman was not an officer of the corporation. Even the president of a corporation has no apparent authority to bind the corporation to an unusual, extraordinary, or unreasonable contract. *Kline v. Little Rapids Pulp Co.*, 206 Wis. 464, 240 N.W. 128 (1932).

The booklets containing the terms of the Swift & Company pension trust are in evidence. Hassett was furnished with copies of the booklets describing the pension plan and admitted he had read them. The authority to administer the pension plan is vested in the pension board. The plan specifically provides that only the "last continuous period of service" shall be taken into account in computing an employee's pension. An employee

who quits loses all credited service. If he is later reemployed, no credit is given for prior service. There is no evidence that these provisions of the pension plan have ever been varied or waived for any employee. The witnesses who testified as to that matter stated that service was never bridged.

The movant on a motion for summary judgment may discharge his burden of proof by a showing that if the case proceeded to trial his opponent could produce no competent evidence to support a contrary position. A prima facie showing by the movant for summary judgment, i.e., the production of enough evidence to demonstrate such party's entitlement to a judgment if evidence were uncontroverted at trial, shifts the burden of producing evidence to the party opposing the motion. A prima facie showing for summary judgment having been made, it should be granted to the movant unless the opposing party offers competent evidence that there is a genuine issue as to a material fact. *Hanzlik v. Paustian, supra.*

In view of the evidence produced by Swift & Company, the burden was on Hassett to produce some evidence to support a finding that a material question of fact existed as to the apparent authority of Kleeman to bind Swift & Company to such a contract. No such evidence was produced. Upon this state of the record, the defendant was entitled to summary judgment.

In conclusion, from our review of the record we have determined that there is no genuine issue of material fact as to whether an oral contract to bridge the plaintiff's services existed. Therefore, it is unnecessary to discuss the questions relating to the statute of limitations, and the judgment of the lower court granting defendant's motion for summary judgment should be and hereby is affirmed.

AFFIRMED.