PIONEER ANIMAL CLINIC, A PARTNERSHIP, APPELLANT, V. TOM GARRY, APPELLEE.

436 N.W.2d 184

Filed March 3, 1989.   No. 87-325.

Law Offices of Cobb & Hallinan, P.C., for appellant.

Joy Shiffermiller, of Atkins Ferguson Zimmerman Carney, P.C., for appellee.

350

HASTINGS, C.J., CAPORALE, and GRANT, JJ., and BURKHARD and HANNON, D. JJ.

HANNON, D.J.

The plaintiff sued Bill Garry and Tom Garry, and later settled with Bill Garry. The trial court granted Tom Garry's motion for summary judgment and dismissed the case. The plaintiff appeals from that order. We affirm.

In reviewing an order granting a summary judgment, this court must take the view of the evidence most favorable to the party against whom the motion is directed and give that party the benefit of all favorable inferences which may be drawn from the evidence. Summary judgment is an extreme remedy to be awarded only when the issue is clear beyond all doubt. *Muller v. Thaut*, 230 Neb. 244, 430 N.W.2d 884 (1988); *Schatz v. Vidlak*, 229 Neb. 4, 424 N.W.2d 613 (1988).

A summary of the facts most favorable to the plaintiff is as follows.

The plaintiff, the Pioneer Animal Clinic (Pioneer), is a partnership composed of three veterinarians, Drs. Arden Wohlers, Dale L. Kurtz, and Dudley J. Smith, doing business in Scottsbluff, Nebraska. The defendant, Tom Garry, lives in Modesto, California, and from there manufactures and sells cattle feed additives under the name of P.D.Q. Livestock Products (P.D.Q.).

Tom Garry's son Bill Garry lives in Grand Island and sells the products of P.D.Q. In the fall of 1983, Bill Garry approached the plaintiff about using P.D.Q. products. After a few meetings, the partners agreed to become a dealer of P.D.Q. products under the following oral agreement: Without compensation from Pioneer, Bill Garry would use leads and introductions supplied by Pioneer to sell P.D.Q. products for Pioneer. The products were expensive, and Pioneer desired not to maintain a significant inventory. When Bill Garry sold some product to a third party, he would tell Pioneer, Pioneer would pay P.D.Q. for the product when it was shipped from California, and Pioneer would look to the customer for payment. Pioneer would buy the product at wholesale and make a profit by selling for a retail price.

During the conversations leading up to the agreement, Bill Garry either stated or implied that he was one of the owners of P.D.Q. and that he was in charge of the distribution of P.D.Q. products east of the Rocky Mountains. He used a business card showing himself as "General Sales Manager." Ostensibly, he agreed to sell for nothing so that he could develop the area before moving on to other areas in need of development. All of the information that the owners of Pioneer had about the ownership and control of P.D.Q. was obtained from Bill Garry, and this information was to prove to be incorrect.

On February 20, 1984, Bill Garry told Dr. Smith, one of the partners of the plaintiff, that he had sold 5 tons of product to Micro-Chemical, Inc., of Amarillo, Texas. A few days later, he left a note at Dr. Smith's office telling him the order had been reduced to 3 tons. On February 22, 1984, Bill Garry issued an invoice for $22,279 for 3 tons of Quick-Fix and another product. The invoice showed P.D.Q. of Modesto as seller, Pioneer as buyer, and Bill Garry as salesman, and showed the product was to be shipped to Micro-Chemical in Amarillo. Pioneer made a check for $22,279 to P.D.Q. to pay for these products. Pioneer expected Micro-Chemical to pay for the products, but later Micro-Chemical denied ordering the products and refused to accept delivery or pay for the products. A few months later, the products were sold as unclaimed freight.

Bill Garry followed the usual practice and picked up the check, endorsed it "P.D.Q. Livestock Products," and negotiated it through a Nebraska bank. He ordered the product from Tom Garry by telephone.

When Pioneer did not get its money, the partners contacted Bill Garry. He told Pioneer that Micro-Chemical refused the product but that "they were going to put their attorneys" from California on it, and he would make them take it. When nothing happened, the partners contacted Micro-Chemical directly and learned that Micro-Chemical maintained it never ordered the product. Later, one of the partners called Tom Garry. He said he would talk to his son and get back to them. He did not do so, but in the summer of 1984, he came to Scottsbluff and visited with some of the partners about the matter. At that

time, he said Bill Garry had done similar things before, and he would make it right with them.

The evidence shows without dispute that Tom Garry was the sole owner of P.D.Q. products. In July of 1981, Tom Garry had established a branch office in Grand Island, Nebraska, with Bill Garry as manager, but this agreement ended in October of that year, and the partners of the plaintiff had no knowledge of it. In October of 1981, Tom and Bill Garry entered into a "Distributor Agreement," which agreement provided that Bill Garry could buy the products from Tom Garry on a "C.O.D. basis," and specifically denied him status as an employee or agent. The agreement did not give Bill Garry any exclusive territory, but Tom Garry agreed not to sell P.D.Q. products to dealers established by Bill Garry during the life of the agreement. This was the agreement under which Tom and Bill Garry were working at the time of the dealings with the plaintiff.

When Bill Garry sold P.D.Q. products, he would call his father on the telephone and have him ship them to the desired destination. He paid for the product, but irregularly, that is, at times he did not pay for all of it right away, and sometimes his checks did not clear his bank. The assertions in the plaintiff's brief that Bill Garry took all of the money from the sale of P.D.Q. products and never paid the defendant and that the defendant did not object or complain about not getting the money are simply not supported by the record.

Neither party offered an affidavit or deposition of Bill Garry.

The trial court did not state its reason for granting the motion for summary judgment. In the briefs, the parties recognize two possible reasons: (1) Tom Garry was not liable for the actions of Bill Garry under any theory, and (2) the plaintiff's settlement with Bill Garry had the effect of releasing Tom Garry, notwithstanding a reservation of rights against Tom Garry.

The evidence shows that Tom Garry knew that Bill Garry was a distributor of P.D.Q. products with the nonexclusive right to establish dealers of the products and to buy the products on a c.o.d. basis from Tom Garry and sell them to third persons. In

*Reeves v. Associates Financial Services Co., Inc.*, 197 Neb. 107, 247 N.W.2d 434 (1976), this court quoted with approval the Restatement (Second) of Agency § 14 J (1958):

"One who receives goods from another for resale to a third person is not thereby the other's agent in the transaction: whether he is an agent for this purpose or is himself a buyer depends upon whether the parties agree that his duty is to act primarily for the benefit of the one delivering the goods to him or is to act primarily for his own benefit."

*Reeves, supra* at 114, 247 N.W.2d at 438.

There is no evidence that Bill Garry was acting for the benefit of Tom Garry, and the "Distributor Agreement" specifically denied him any authority to bind Tom Garry.

The plaintiff also maintains that Bill Garry had apparent authority to bind Tom Garry. There is no evidence to suggest any communication of any type from Tom Garry to anyone in Nebraska before the events significant to this action occurred. True, in 1981, Tom Garry had started an office in Grand Island with Bill Garry as manager, but there is no evidence that the plaintiff knew about this until after the lawsuit was filed. All of the communications that the plaintiff must rely upon to establish apparent authority of Bill Garry to bind Tom Garry come from Bill Garry. "Apparent authority or agency for which a principal may be liable must be traceable to him and cannot be established by the acts, declaration, or conduct of an agent." *Hassett v. Swift & Co.*, 222 Neb. 819, 824, 388 N.W.2d 55, 59 (1986).

The plaintiff relies upon the fact that Bill Garry used a business card identical to Tom Garry's, except Bill Garry's name appears thereon showing him to be general sales manager. There is no evidence that Tom Garry knew about Bill Garry's using such a card. Neither party introduced any evidence from Bill Garry, and Tom Garry denies doing any act which might give Bill Garry apparent authority.

On July 7, 1986, the plaintiff and Bill Garry settled this suit with the plaintiff and its partners, and they covenanted not to sue Bill Garry for any matter arising out of any business done between Bill Garry and the plaintiff or its partners. In that

agreement, the plaintiff and its partners clearly reserved all rights against Tom Garry.

The plaintiff maintains Tom and Bill Garry were engaged in a joint venture.

"[T]o constitute [a joint venture] there must be an agreement to enter into an undertaking in the objects of which the parties have a community of interest and a common purpose in performance, and each of the parties must have equal voice in the manner of its performance and control of the agencies used . . . ."

*Fangmeyer v. Reinwald*, 200 Neb. 120, 131, 263 N.W.2d 428, 434 (1978). The only agreement between Tom and Bill Garry is for Bill Garry to purchase Tom Garry's products for sale to others. Not only did they not have equal voice in the doings of each other, they had no voice in the business pursuits of the other. There was no actual agreement between the parties for a joint venture, and there is no apparent authority for Bill Garry to act for an apparent joint venture for the same reasons stated above as to the alleged apparent agency.

The defendant argues that even if Tom Garry was liable under some theory, the release of Bill Garry releases Tom Garry also. In *Dickey v. Meier*, 188 Neb. 420, 424, 197 N.W.2d 385, 388 (1972), this court held: "[I]n a tort action based exclusively on the alleged negligence of an employee or agent, a valid release of that employee-agent releases the employer or prinicpal [sic] from liability, even though the release specifically reserves all claims against the employer-principal." In *Ericksen v. Pearson*, 211 Neb. 466, 319 N.W.2d 76 (1982), this court held that a valid release of the principal releases the agent also.

The plaintiff recognizes these principles and seeks to avoid their effect by stating in the amended petition, after the allegations of facts, Bill and Tom Garry "breached the verbal contract between plaintiff and defendants by shipping and delivering products for which there were no orders," and then argues in its brief that liability of Tom Garry is contractual and not tort liability; hence, the principle stated in *Dickey v. Meier, supra*, does not apply. The character of an action as one in tort or on contract is determined by the nature of the grievance, not by the form of the pleadings, with consideration being given to

the facts which constitute the cause of action. *Lincoln Grain v. Coopers & Lybrand*, 216 Neb. 433, 345 N.W.2d 300 (1984); *Driekosen v. Black, Sivalls & Bryson*, 158 Neb. 531, 64 N.W.2d 88 (1954). The facts the plaintiff alleges for the first and second causes of action plead torts, although at least some of the duties violated by the torts arose from the contractual relationship of Pioneer with Bill Garry. If Tom Garry could be liable for the torts of Bill Garry, that liability would be secondary, and the release of Bill Garry would release Tom Garry.

AFFIRMED.