IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

ENGLISH ESTATES V. CHAMPION KEARNEY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

ENGLISH ESTATES, INC., DOING BUSINESS AS SERVPRO OF LINCOLN, APPELLEE,

V.

CHAMPION KEARNEY, L.L.C., APPELLANT.

Filed December 6, 2022.    No. A-22-074.

Appeal from the District Court for Buffalo County: RYAN C. CARSON, Judge, on appeal thereto from the County Court for Buffalo County: GERALD R. JORGENSEN, JR., Judge. Judgment of District Court affirmed.

Jared J. Krejci, of Smith, Johnson, Allen, Connick & Hansen, for appellant.

David C. Briese, of Crary, Huff, Ringgenberg, Hartnett & Storm, P.C., for appellee.

MOORE and RIEDMANN, Judges.

RIEDMANN, Judge.

## INTRODUCTION

Following severe flooding in the city of Kearney in July 2019, English Estates, Inc., doing business as ServPro of Lincoln, (ServPro) performed restoration work at the AmericInn, owned by Champion Kearney, LLC (Champion). A dispute arose as to the work being performed and Champion terminated ServPro's services. Thereafter, ServPro brought suit in the county court for Buffalo County to collect unpaid amounts under the alternate theories of breach of contract and quantum meruit. A jury returned a verdict in favor of ServPro in the amount of $28,598.01. Champion appealed to the district court for Buffalo County, which affirmed the county court's judgment. Assigning various evidentiary errors and errors in instructing the jury, Champion appealed to this court. We affirm.

- 1 -

BACKGROUND

ServPro is a disaster recovery team that provides restoration and remediation services following physical damage to real property. It is owned by Matthew Marchese. Once ServPro's services are requested, it assesses the damage on site. Oftentimes, they are unaware of the extent of services needed until day two or three of a job. Consequently, ServPro is unable to provide an estimate of cost upon initial assessment. Instead, they issue a rough order of magnitude (ROM), which is a "guesstimate" of the cost. That allows the owner to decide whether they can afford the repair work, whether financing is needed, or if an insurance claim should be filed. By definition, the ROM can decrease 25 percent or increase 50 percent.

As it relates to a flooding event, ServPro's services can include an assessment, mitigation services, mold remediation, demolition, and rebuild services. Its mitigation efforts are to help prevent further damage or secondary damages and are considered emergency service.

Following the Kearney flooding of July 9, 2019, ServPro was called by another agency to perform work on its building. When it arrived in Kearney on July 10, the only available parking was in Champion's parking lot, so the ServPro employees asked if they could park their trailer in the hotel parking lot. The employees then discovered that the Champion staff was trying to mitigate the flood damage at the hotel themselves, so ServPro's marketing manager offered ServPro's assistance to Misty Lingle, Champion's hotel manager at AmericInn. Champion accepted their offer. ServPro ultimately provided its services to a number of businesses in the Kearney area.

After Lingle indicated she would like ServPro's assistance, project manager, Mike Vogel, took over. Lingle did not have approval authority, so she contacted the area manager of the hotel, Viral Patel, who was in Texas. Via a speakerphone conversation among Lingle, Vogel, and Patel, ServPro was authorized to begin work. Lingle testified that when she arrived at work on July 11, ServPro was already there tearing up carpet.

The parties dispute the events that occurred subsequent to Champion retaining ServPro's services; therefore, we will set forth each party's version.

*ServPro's Account of Events.*

According to Marchese, Vogel sent a ROM to Patel to be signed on July 12, 2019, along with ServPro's contract and authorization to proceed, but they were not returned. Marchese testified that Patel indicated he was unable to print the documents and that he would print them when he arrived at the site. Patel's arrival to Kearney was delayed, and by the time he arrived in Kearney, ServPro was about 3 days into the project and 75 to 85 percent of the work had been completed.

The email message that accompanied the ROM indicated that it was a "rough pre-lim estimate to get the facility dry, and mold free." It indicated it was "very rough" due to ServPro's uncertainty "of all that [Champion] want[s] us to do at this point." The ROM set forth a description of the work and the cost for each item. It reflected a total price of $63,462.72. Marchese testified that using the percentage variation of a ROM, the estimate equated to somewhere around a "90-plus-thousand-dollar top end of the estimate" which he probably would have increased if they were going to see the project through to the end.

Marchese arrived at the hotel on July 11 or 12, 2019, and identified the hotel as "grossly contaminated and destroyed." He described couches and chairs floating with dead fish on the lobby

floor with instant mold growth. "It was a disaster." Marchese planned to do a walk-through of the hotel with Patel when Patel arrived to explain what had been done and what was left to do, but Patel immediately requested that Marchese discount the price. As Marchese attempted to advise him on the measures that needed to be taken, Patel was resistant to his proposed work. Marchese walked him through other buildings where both ServPro and a competitor were performing services to show him the difference between the proper way to mitigate and the improper way.

According to Marchese, at one point in their initial meeting, Patel offered to "just write [Marchese] a $5,000 check right now and we call it good." Marchese declined based upon the financial investment ServPro had already made in the mitigation and because his company does not do "sweetheart deals." Patel then threatened to pay him nothing and let him "fight for the whole thing in court."

At some point, Patel told Marchese he was only paying $50,000. When Marchese realized that he might be out everything they had already expended, he agreed to Patel's offer. Marchese expressed his doubt that Patel would actually pay him. Therefore, he sent Patel a text message on July 16, 2019, outlining the conditions to which they had agreed. The message began "I need you to commit to $50,000 to Execute the plan that we discussed yesterday." He then set out the work to be included and what would be excluded. He requested payment "half today and the remaining half in 2 days when [sic] are complete with that process." He requested confirmation of their agreement within 2 hours and stated "This is the absolute best I can do for you. I estimate the project total to be between $70,000 and $80,000 withOUT the pool area included."

According to Marchese, the $50,000 was a settlement agreement and not an agreed price for the work. Also, Marchese explained that $50,000 would cover some of his costs that he already had into the project. Despite Patel's reply to the text agreeing to pay $50,000, Champion did not make any additional payment at that time.

When Marchese had not received payment, he called Patel but was unable to reach him. The following day, he sent a text message advising that ServPro had reached substantial completion and requesting payment. Marchese called Patel on July 18, 2019, to discuss the nonpayment to which Patel responded that 15 percent of the work was uncompleted. Patel indicated he was willing to pay an additional $35,000 for a total of $45,000 ($10,000 having previously been paid on July 16). Marchese advised him that he was not reducing the amount any further. Marchese followed up with a text message at 11:48 a.m., reiterating that he was not willing to accept anything less than $50,000 and that he needed the remaining balance paid that day. He offered to accept a payment of $45,000 if that was what Patel was willing to pay and asked Patel to let him know when the transfer was complete and that they would "discuss the rest at that time."

Instead of responding to Marchese, Patel emailed Vogel at 12:13 p.m. on July 18, 2019, although Patel had not had any contact with him since the second day ServPro was on the project. Patel advised Vogel that ServPro did not finish the project and that Champion was stopping any additional work by ServPro. He continued, stating he would

> transfer a total of $35,000 ($10,000 of which has already been charged on my credit card)
> to the routing and accounting number you provided. Reply back with your agreement that

the hotel will no longer owe any sum beyond that and that it will be clear of anny [sic] additional charges.

Patel forwarded a copy of that email to Marchese at 12:42 p.m.

Patel then called the ServPro office, indicating that he wanted an invoice showing he owed $35,000. He was transferred to Jennifer Adkisson, an account representative, who called Marchese to see if that would be OK, and Marchese authorized an invoice for $35,000. He recalled specifically advising Adkisson that Patel knew it was not the final invoice, but if he wanted something that said he needed to pay $35,000 now, that would be fine. Adkisson issued the invoice and a cover letter that contained release language dictated by Patel that stated "Receipt of the payment in full will hold AmericInn free and clear of any other charges." Marchese denied knowing anything about requested release language at the time Adkisson requested permission to send the invoice. Once he saw the invoice after the money transfer had been received, he questioned Adkisson about the release language and she told him Patel told her to include it and she thought Marchese had approved it.

Marchese contacted Patel to tell him that the $35,000 invoice was not the final bill. He advised Patel that because he broke their initial agreement, and then their subsequent settlement agreement, Marchese was billing him for the fair and reasonable price for the work performed. He sent a final bill for $73,598.01.

*Champion's Account of Events.*

Patel testified that he is a representative of Champion, but not the owner of AmericInn; rather, he is the area manager of the hotel. Upon Lingle's suggestion, he hired ServPro to perform work at the hotel. Patel was not at the hotel when ServPro first came in and there was a verbal agreement for services. Patel received a preliminary estimate of the work to be performed via email on July 12, 2019. However, he never received any documents to sign, including an authorization to proceed.

Patel arrived in Kearney very late on July 13, 2019, and left the evening of July 14. He first met with Marchese on July 14. Prior to meeting with Marchese, Patel and his "hotel team," including Lingle, took a tour of the property to assess the situation. He saw equipment running but no one from ServPro was on site. He and his team began removing carpet in the first floor guest rooms. ServPro had removed the carpet in the hallway and lobby, but had not done anything else. When he met with Marchese on July 14, Patel began asking questions about the process because he was uncomfortable that things were not moving along. Marchese took him to one of the other hotels to show him what would be done.

Patel asked what the cost would be but Marchese was unable to put a price on it. After Patel pressed for a number, Marchese indicated he would get something for him. Patel received a text message on July 16, 2019, that it would cost $50,000. According to Patel, he accepted it the next day. He denied ever agreeing to pay half of the amount on the day the agreement was reached and the remaining half within the next 2 days. Rather, he recalled that he was asked to pay $10,000, which he paid by credit card.

After Patel left Kearney, he received a text message on July 16, 2019, that requested his commitment to $50,000 and a "plan" that was discussed via phone the day before. Patel sent

confirmation via text message on July 16 agreeing "to have scope of work mentioned for 50,000." According to Patel, this constituted the first written agreement between ServPro and Champion. On July 16, Champion paid $10,000 via two credit card charges. On July 17, Patel requested ServPro's account information and Marchese sent him the account and routing number via text message the morning of July 18 at 8:03.

Patel kept in touch with his hotel team and was dissatisfied with the work that was being done. On July 18, 2019, Patel lost confidence in ServPro and decided he was not going to carry on with them. He had a phone conversation with Marchese during which Patel told Marchese they were stopping work. Patel offered to pay $45,000 to end their relationship. Marchese refused and followed up with a text message at 11:48 a.m., confirming that he was not accepting $5,000 less.

After receiving Marchese's text message, Patel contacted the ServPro office. He testified he did so because he wanted to conclude his relationship with ServPro and did not have the routing number to make the $35,000 transfer. He was transferred to Adkisson. He expressed his displeasure and explained that he was stopping work and was willing to pay $35,000. According to Patel, Adkisson indicated she needed to contact her supervisor and would get back to him and she did. Patel received an invoice reflecting the $35,000 amount. He called Adkisson back and requested an email confirmation that AmericInn owed nothing further. He told her word-for-word what language to insert. He received an email from Adkisson at 2:43 p.m. on July 18, 2019, with the invoice and the requested release language.

Patel denied ever having a conversation with Marchese in which he said he would not pay him anything, nor did he ever threaten to sue Marchese.

Lingle testified that she has been the manager of AmericInn since 2016. She was at the hotel on July 9, 2019, when the flooding occurred. On July 10, ServPro employees came in and offered to help. Approval was given and ServPro began working early on July 11. The ServPro employees removed the carpet in the lobby and hallway and brought in fans and dehumidifiers. On July 12, they started cutting the hallway walls and removing insulation. She confirmed that Patel arrived on July 13 or 14, and that she, Patel, and other hotel employees removed carpet in the first floor guest rooms. After Patel left Kearney, Lingle kept him apprised of the work being done and sent him pictures of the progress.

Lingle reviewed the final invoice that was sent to Champion and testified to work that was charged for but not actually performed. She also explained that after ServPro left, Champion had to retain other contractors to recut drywall, remove sheetrock from outlets, and pull nails out of the walls.

*Trial Court Proceedings.*

ServPro filed suit in the county court for Buffalo County on November 13, 2019, seeking recovery for breach of oral contract, or in the alternative, quantum meruit and unjust enrichment. It sought "payment of the actual value of the services provided" under its breach of contract claim and for the "reasonable value of the services provided" under the quantum meruit claim. Under all three theories, it sought recovery of $28,598.01. Champion filed an amended answer and counterclaim. It admitted the parties entered into an agreement for the provision of necessary cleaning and/or restoration services but denied any sums remained owing. It also asserted various

affirmative defenses including that of accord and satisfaction. The counterclaim was later dismissed.

ServPro filed three motions in limine. As relevant to this appeal, the first motion in limine sought exclusion of evidence regarding (a) the deficiency of ServPro's services and the reasonableness of their costs; (b) invoices from subsequent contractors who performed work at AmericInn; (c) statements made by employees of another ServPro franchise regarding the quality of ServPro's services; and (d) Champion's counterclaim which had been dismissed. The court granted ServPro's motion as to each of these issues.

ServPro's second motion in limine sought to exclude evidence of a compromise agreement between the parties of $50,000. The court determined that in order to give context to the monies paid by Champion, it was necessary to establish that ServPro was willing to accept $50,000 in settlement of its claim. However, the court decided that a limiting instruction was necessary to instruct the jury "that that expression by [ServPro] can only be considered in regards to Champion's defense of accord and satisfaction and not as to the appropriate measure of damages suffered by [ServPro]." The parties were each directed to provide a proposed limiting instruction.

ServPro's third motion in limine sought to exclude the release and indemnity agreement entered into between the parties as settlement of Champion's counterclaim. The court granted ServPro's motion.

A jury trial commenced July 12, 2021. Marchese, Patel, and Lingle all testified consistent with the facts set forth above. At a jury instruction conference, Champion objected to several instructions. It objected to the statement of the case instruction on the basis that it misstated the law on quantum meruit; to the instruction on accord and satisfaction, claiming it misstated the elements of the defense; to the instruction on agency because it failed to include apparent agency; and to the limiting instruction regarding the $50,000 settlement or proposal because it was without any basis and was improperly suggestive.

During closing arguments, ServPro objected to Champion's argument that in determining what the contract was between the parties it had several options including "the $50,000 agreement." The court sustained the objection that it was improper argument due to the limiting instruction.

The jury returned a verdict in favor of ServPro in the amount of $28,598.01, the difference between the total amount billed and Champion's payment of $45,000. Champion appealed to the district court which affirmed the county court's judgment. Champion now appeals.

## ASSIGNMENTS OF ERROR

Champion assigns, restated and renumbered, that the county court erred in (1) sustaining and enforcing at trial portions of motions in limine filed by ServPro; (2) giving jury instructions No. 4 (quantum meruit), No. 8 (accord and satisfaction), and No. 10 (limiting instruction on use of certain evidence); (3) failing to give an instruction on apparent agency; and (4) sustaining an objection made during Champion's closing argument. It also assigns that the district court erred in affirming the county court's judgment.

## STANDARD OF REVIEW

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *Pierce v. Landmark Mgmt. Group*, 293 Neb. 890, 880 N.W.2d 885 (2016). When the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id.*

In a civil case, the admission or exclusion of evidence is not reversible error unless it unfairly prejudiced a substantial right of the complaining party. *Id.*

In an appeal based on the claim of an erroneous instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *Vredeveld v. Clark*, 244 Neb. 46, 504 N.W.2d 292 (1993).

In reviewing a claim of prejudice from instructions given or refused, the instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and evidence, there is no prejudicial error necessitating reversal. *Id.*

Conduct of final argument is within the discretion of the trial court, and absent an abuse of that discretion, the trial court's ruling regarding final argument will not be disturbed. *State v. Hoops*, 30 Neb. App. 120, 965 N.W.2d 396 (2021).

## ANALYSIS

*Motions in Limine.*

Champion assigns that the county court erred in "sustaining and enforcing at trial" several portions of motions in limine filed by ServPro. Brief for appellant at 7. It identifies three separate motions in limine and we will address each in turn; however, before doing so, we set forth the principles governing appellate review applicable to motions in limine.

A motion in limine is a procedural step to prevent prejudicial evidence from reaching the jury. *McCune v. Neitzel*, 235 Neb. 754, 457 N.W.2d 803 (1990). It is not the office of a motion in limine to obtain a final ruling upon the ultimate admissibility of the evidence. *Id*. In order to preserve error for appellate review, the party opposing a motion in limine which was granted must make an offer of proof outside the presence of the jury unless the evidence is apparent from the context within which the questions were asked. *Id*. See, also, *Frerichs v. Nebraska Harvestore Sys.*, 226 Neb. 220, 410 N.W.2d 487 (1987); Neb. Rev. Stat. § 27-103(1)(b) (Reissue 2016).

Upon our review of the record, we note that Champion failed to challenge at trial a number of the issues it now appeals. The record in this case is devoid of any offer of proof or any questions objected to from which the context of the evidence would be apparent as to the following issues: (1) invoices from subsequent contractors who performed work at AmericInn, (2) statements made by employees of another ServPro franchise regarding the quality of ServPro's services, (3) Champion's counterclaim which had been dismissed, and (4) the release and indemnity agreement entered into between the parties as settlement of Champion's counterclaim. Because a ruling on a motion in limine is not a final ruling upon the admissibility of the evidence, Champion has failed to preserve these issues. See *Thrift Mart v. State Farm Fire & Cas. Co.*, 251 Neb. 448, 558 N.W.2d

531 (1997), *overruled on other grounds, Hornig v. Martel Lift Systems*, 258 Neb. 764, 606 N.W.2d 764 (2000).

The remaining subpart of ServPro's first motion in limine which was preserved for review was the deficiency of ServPro's services and the reasonableness of their costs. In its motion in limine, ServPro sought to exclude testimony from Patel and Lingle that ServPro's services were deficient and that the value of its services was unreasonable. The court granted the motion with the caveat that Patel and Lingle could "express an opinion of dissatisfaction as to the work done by [ServPro], or lack of work being done claimed by [ServPro]. Those lay witnesses, shall not be allowed to reference or testify as to the quality of any work done or the reasonableness of its value."

We find no abuse of discretion in the county court's ruling. Both Patel and Lingle admitted that they have no experience in the construction industry or with disaster restoration construction. Therefore, they lacked the foundation to render an opinion on either the adequacy of the work performed or its value. Even Champion's counsel agreed at the hearing on the motion in limine that "they aren't qualified to say this was done wrong. This work that you did was wrong in that sense."

Champion was allowed to elicit testimony from both Patel and Lingle as to their observations of what work was, and was not, performed, and it did so. Patel testified he was unhappy with the lack of progress, work was not done correctly, sheetrock was not being cut, and cabinets were not being pulled out. Although an exhibit containing the final bill marked up by Lingle to identify work that was not completed was rejected at trial, Lingle was allowed to testify whether certain work was performed. Contrary to Champion's assertion that it was not allowed to adduce evidence that a bona fide dispute existed between the parties due to the court's ruling on this issue, the jury was presented with testimony evidencing Champion's displeasure with ServPro's services.

ServPro's second motion in limine sought to exclude evidence of a compromise agreement between the parties of $50,000. At trial, the parties disputed whether the $50,000 was the result of a negotiated settlement that would be inadmissible under Neb. Rev. Stat. § 27-408 (Reissue 2016) or was the amount of the contracted price agreed to by the parties. At the hearing on the motion in limine, however, Champion's counsel argued that it was necessary for the jury to hear the $50,000 amount because Champion paid $45,000 of the $50,000 that had been agreed to, and ServPro accepted that amount, thereby satisfying the elements of an accord and satisfaction.

The court determined that "in order to give context to the monies paid in by [Champion], it is necessary to establish that [ServPro] was willing to accept $50,000.00 in settlement of this claim." It stated it would give a limiting instruction that the jury could only consider this amount in regard to Champion's affirmative defense of accord and satisfaction and not as to the appropriate measure of damages suffered by ServPro. Prior to trial, Champion filed a motion to alter or amend this order requesting that the court reserve all objections on the issue until trial.

After the jury was selected, the court heard argument on Champion's motion to alter or amend. Champion argued that the original agreement between the parties was for $50,000. The court stated that "if your client's impression was it was for 50- to start with, sure, he can testify that's what he thought. . . . You can refer to that. You can offer evidence about that." The court maintained its original position that a limiting instruction would be given and instructed the jury as follows: "You have heard evidence regarding an agreement or proposal for $50,000.00. You are

not to use evidence of this agreement or proposal with regard to determining damages." Our record does not contain a proposed limiting instruction offered by either party, but the bill of exceptions indicates that Champion's limiting instruction was given, although it maintained its objection to one being given at all.

Champion assigns that the county court "erred in sustaining and enforcing at trial [ServPro's] first Motion in Limine II and requiring a limiting instruction regarding a $50,000 proposed settlement." Brief for appellant at 7. As detailed above, the court did not grant ServPro's request that evidence of a $50,000 agreement or proposal be excluded; rather, it allowed such evidence and both parties addressed it throughout the trial. We therefore reject the first portion of Champion's assigned error.

As to the limiting instruction, Champion argues on appeal that there was no basis for the instruction and that it was improper and prejudicial. We disagree.

Regarding the basis for the instruction, ServPro asserted that the $50,000 represented a compromised settlement. Section 27-408 excludes evidence of settlement negotiations to prove the value of a claim. In an attempt to balance the inadmissibility of this evidence with the necessity of its admission to put context to the $45,000 paid by Champion, the court determined a limiting instruction was necessary. We agree and thus find the court had an adequate basis for issuing a limiting instruction.

As to the propriety of the instruction, we recognize that Champion asserted at the hearing on its motion to alter or amend that the $50,000 represented the contract price agreed to by the parties; however, neither the pleadings nor the proposed jury instructions integrated that as the proper measure of damages.

In its complaint, ServPro sought either the "actual value" of its services or the "reasonable value" of those services. Champion submitted proposed jury instructions that included both an instruction on the statement of the case and on damages. In its statement of the case instruction, it proposed that the jury be instructed that plaintiff was seeking "the reasonable value of its services." In its proposed instructions for damages, it stated that ServPro was entitled to recover the "reasonable cost of the work performed" under both breach of contract and quantum meruit. The court instructed the jury in conformity with these proposed instructions.

Moreover, Champion's position was that ServPro failed to complete the work as agreed upon. In such a situation, the proper measure of damages even under a breach of contract theory is the reasonable value of the services performed. See *Bloedorn Lumber Co. v. Nielson*, 300 Neb. 722, 915 N.W.2d 786 (2018) (stating that if party only partially performs contract and other party has accepted and retained benefits thereof, party seeking payment may recover reasonable or fair value of such performance, subject to reciprocal right of other party to recoup such damages as he or she has suffered from failure to perform).

The limiting instruction stated "You have heard evidence regarding an agreement or proposal for $50,000.00. You are not to use evidence of this agreement or proposal with regard to determining damages." Given ServPro's prayer for relief for the "reasonable cost" of the services performed and the measure of damages upon which the jury was properly instructed, the limiting instruction was proper because the $50,000 had no relationship to the measure of damages sought. We find no abuse of discretion in the court's limiting instruction.

*Jury Instructions.*

Champion assigns the court erred in giving jury instructions No. 4 (quantum meruit) and No. 8 (accord and satisfaction), and in failing to give an instruction on apparent agency. We will address each instruction separately

The jury was instructed that before ServPro could recover on its claim of quantum meruit, it must prove that Champion received and retained benefits conferred by ServPro and the reasonable value of those services. Champion had proposed that the instruction also contain language that required ServPro to prove "that under the circumstances, it would be inequitable and unconscionable to permit [Champion] to receive the services without payment." The court rejected the proposed language.

Champion asserts that the instruction as given was "improper and highly prejudicial and consequential" because it did not require a showing of inequity or unconscionability. Brief for appellant at 25-26. We disagree.

Quantum meruit is an equitable principle, imposed by law when justice and equity require the defendant to disgorge a benefit that he or she has unjustifiably obtained at the plaintiff's expense. See *DH-1, LLC v. City of Falls City*, 305 Neb. 23, 938 N.W.2d 319 (2020). Champion asserts that the law on quantum meruit requires the jury to be instructed that recovery requires a showing of inequity or unconscionability. In support thereof, it quotes the following from *Tracy v. Tracy*, 7 Neb. App. 143, 148-49, 581 N.W.2d 96, 101 (1998): "Where benefits have been received and retained under circumstances that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the recipient to pay the reasonable value of the services."

While we do not dispute that this is an accurate statement of the law, *Tracy v. Tracy, supra*, involved a bench trial; therefore, it offers no support for the elements upon which a jury must be instructed. Nor is there a pattern jury instruction that sets forth the elements of quantum meruit. Both parties testified that ServPro offered its services to Champion and Champion accepted them. Instruction No. 4 stated that ServPro claimed it was entitled to compensation from Champion in the absence of a contract, because ServPro conferred a benefit upon Champion with the understanding that Champion would pay for ServPro's services. The law imposes a quasi-contract when justice and equity require the defendant to disgorge a benefit that he or she has unjustifiably obtained at the plaintiff's expense. See *City of Scottsbluff v. Waste Connections of Neb.*, 282 Neb. 848, 809 N.W.2d 725 (2011). However, we do not find that the absence of language regarding inequity and unconscionability makes the instruction given defective. Upon our review of jury instruction No. 4, we find it correctly states the law, is not misleading, and adequately covers the issue supported by the pleadings and evidence.

The district court determined that even if the instruction was erroneous, it was not prejudicial because the jury was instructed on both breach of contract and quantum meruit, but returned a general verdict form in favor of ServPro.

> The "general verdict" rule, which is also referred to as the "two issue" rule, is a policy rule which provides that where a general verdict is returned for one of the parties, and the mental processes of the jury are not tested by special interrogatories to indicate which issue was determinative of the verdict, it will be presumed that all issues were resolved in favor of

the prevailing party, and, where a single determinative issue has been presented to the jury free from error, any error in presenting another issue will be disregarded.

*de Vries v. L & L Custom Builders*, 310 Neb. 543, 568-69, 968 N.W.2d 64, 84 (2021). There is no error asserted in presenting the breach of contract claim to the jury and the evidence was sufficient to support a verdict on this claim; therefore, even if instruction No. 4 was erroneous, Champion cannot prove it was prejudiced.

Champion assigns that the jury instruction regarding accord and satisfaction was improper because it required Champion to prove a meeting of the minds as to accord and satisfaction and placed undue emphasis on the intent of the parties. We reject this argument.

The portions of jury instruction No. 8 to which Champion objects state:

The burden of proof to maintain an alleged accord and satisfaction is on the party seeking to enforce it. To meet this burden of proof, it is first to be shown that the minds of the parties to the accord and satisfaction met. The key element of accord and satisfaction is the intent of the parties.

Champion asserts that there are only three elements of an accord and satisfaction and the court erred in imposing the additional element of intent.

Our case law reveals that this portion of instruction No. 8 was a correct statement of the law.

The burden of proof to maintain an alleged accord and satisfaction is on the party seeking to enforce it. *Cox v. Rippe*, 146 Neb. 309, 19 N.W.2d 514 (1945); *McKinnon v. Holden*, 85 Neb. 406, 123 N.W. 439 (1909). To meet this burden of proof, it is first to be shown that the minds of the parties to the accord and satisfaction met. *See Cox, supra*. The key element of accord and satisfaction is the intent of the parties, which, although as a general rule presents a question of fact, becomes a question of law when the evidence creates no conflict as to intent. *Mahler v. Bellis*, 231 Neb. 161, 435 N.W.2d 661 (1989).

*Lone Cedar Ranches v. Jandebeur*, 246 Neb. 769, 775, 523 N.W.2d 364, 369 (1994). Here there was a conflict in the evidence as to the intent of the parties as to whether the $35,000 additional payment was an accord and satisfaction of Champion's obligation to ServPro; therefore, it was a question of fact for the jury to decide and it was proper to instruct the jury on it. See also *High-Plains Cooperative Assn. v. Stevens*, 204 Neb. 664, 284 N.W.2d 846 (1979) (approving instruction on accord and satisfaction that included meeting of minds).

We also reject Champion's argument that the instruction was repetitive and "overly emphasized subjective intent elements." Brief for appellant at 28. While the instruction as given does mention intent twice and identifies it as "a key element," it is a correct statement of the law and we do not find it to be misleading.

Champion assigns the county court erred by failing to give an instruction on apparent authority as it relates to Adkisson. It claims its "entire theory of its case was predicated on apparent authority." Brief for appellant at 22. It explains:

Mr. Patel requested that Ms. Adkisson generate a $35,000.00 invoice which includes language that states that payment of this sum holds Champion free and clear of all other

charges. Both sides testified that Ms. Adkisson then called Mr. Marchese and asked him whether she could accede to Mr. Patel's request. Mr. Marchese told her to proceed, and Ms. Adkisson did proceed with Mr. Patel's request. Ms. Adkisson made it known to Mr. Patel that she spoke with her supervisor when she complied with Mr. Patel's request.

*Id.* at 23. It reasons that it was "eminently reasonable" for Champion to rely on Adkisson's and ServPro's representation that Adkisson had the authority, and that ServPro agreed, to settle their dispute for a final payment of $35,000. *Id.*

The record is contrary to Champion's assertion that Patel asked Adkisson to include release language prior to her contacting Marchese to inquire about issuing the invoice. The following exchange occurred during Patel's direct examination:

Q. And you spoke with a lady on the phone?

A. Yes.

Q. And you asked her to provide an invoice for 35,000?

A. Along with the routing number, yes.

Q. And she provided that invoice, right?

A. Yes.

Q. Then, after she provided that invoice, you called her back and wanted an email stating the hotel would be clear of any additional charges?

A. I mentioned to her over the phone that that's what I would like to have on the invoice stated.

Q. Right. So, you'd agree with what I just said.

A. Please repeat again.

Q. Well, you got the invoice and then you went – you called her again and said, I want an email notification saying that we don't have to owe anything else.

A. This is correct, yes.

Q. And you told her word-for-word what to put in that email, right?

A. That's correct, she asked me.

Marchese confirmed that when Adkisson called him for permission to issue the invoice, she did not inquire about any release.

Based on our review of the evidence, we find no error in the failure to instruct the jury on apparent authority. In order for a jury instruction to be given, it must be warranted by the evidence. *State v. Garcia*, 311 Neb. 648, 974 N.W.2d 305 (2022).

Apparent authority is authority that is conferred when the principal affirmatively, intentionally, or by lack of ordinary care causes third persons to act upon an actor's apparent authority. Apparent authority gives a professed agent the power to affect the principal's legal relationships with third parties. The power arises from, and is limited to, the principal's manifestations to those third parties about the relationships. Stated another way, apparent authority for which a principal may be liable exists only when the third

party's belief is traceable to the principal's manifestation and cannot be established by the actor's acts, declarations, or conduct.

*Kohout v. Bennett Constr.*, 296 Neb. 608, 615-16, 894 N.W.2d 821, 828 (2017) (internal citations omitted).

To determine apparent authority, the conduct in question is that of the principal, not its agent. Champion quotes 2 W. Fletcher, Cyclopedia of the Law of Private Corporations § 442 for the proposition that "Apparent authority exists when a principal voluntarily places an agent in a position where an ordinary business person is justified in believing that the agent is acting pursuant to existing authority." Brief for appellant at 23. Champion contends that ServPro placed Adkisson in a position to make Patel's reliance on her authority reasonable.

The evidence reveals that Marchese, ServPro's owner, communicated his refusal to accept less than $50,000 from Champion just hours prior to Patel contacting ServPro's office. Marchese did so in a phone conversation and in a follow-up text message. Shortly thereafter, Patel sent emails to Vogel and Marchese expressing his displeasure with the work, advising he was stopping additional work, and offering a transfer of $35,000. He requested that they "[r]eply back with your agreement that the hotel will no longer owe any sum beyond that and it will be clear of anny [sic] additional charges." When he did not receive a response, he called the ServPro office "to see if [he] can get somebody to get me an invoice and things like that." He was transferred to Adkisson, an accounts receivable clerk. She is not an owner, officer, or any sort of manager of ServPro.

There is no manifestation by ServPro that would cause Patel to justifiably believe that Adkisson had the authority to accept partial payment in full satisfaction of a bill. ServPro's owner unequivocally refused to accept tender of a lesser amount just hours prior. We find this situation similar to that in *Hassett v. Swift & Co.*, 222 Neb. 819, 388 N.W.2d 55 (1986).

In *Hassett*, an employee sued his employer for breach of contract when the employer refused to "bridge" his 6-month absence from the company for the purpose of calculating his pension. Despite a provision in the pension plan that denied credit for prior service and statements by several managers that no bridging would be allowed, the employee brought suit claiming that he returned to employment at the request of his former supervisor who allegedly promised him that his absence would be "bridged" for purposes of computing his pension. The employee claimed that his prior supervisor, the city sales manager, had apparent authority to bind the company to such an agreement.

In granting summary judgment for the employer, the Nebraska Supreme Court stated:

There is nothing in the record to support a finding that a genuine issue of material fact exists as to the apparent authority of a city sales manager to promise to vary or waive a provision in the corporation's employee pension plan. [The supervisor] was not an officer of the corporation. Even the president of a corporation has no apparent authority to bind the corporation to an unusual, extraordinary, or unreasonable contract.

*Id*. at 824, 388 N.W.2d at 59.

Similarly, the evidence in the present case does not support a finding of apparent authority by Adkisson to accept Patel's reduced payment in full satisfaction of his account. A tendered jury instruction is warranted by the evidence only if there is enough evidence on the issue to produce a

genuine issue of material fact for the jury to decide. *Armstrong v. Clarkson College*, 297 Neb. 595, 901 N.W.2d 1 (2017). The county court did not err in refusing Champion's proposed instruction on apparent authority and the district court did not err in affirming that decision.

Champion assigns as error the county court's sustaining of an objection made during its closing argument. Defense counsel argued:

> Now, in this case, you're poised with a difficult question of what is the contract? What contract? What are the terms of this contract? Because you have different views you could have, because you could believe that there was an agreement at the beginning that we'll just agree with the reasonable value of your work when you choose whatever work you're going to do, and charge what you want. And that can be one of the agreements you could find. You could find the $50,000 agreement.

At that point, counsel for ServPro objected stating it was improper argument in light of the limiting instruction and the objection was sustained.

The extent of Champion's argument on appeal in support of this assigned error is "To add insult to injury, the County Court emphasized its comment on the evidence when it sustained [ServPro's] objection during Champion's closing argument." Brief for appellant at 31. The argument is made in conjunction with the argument related to the limiting instruction, which we addressed above.

The district court determined that although the objection may have been premature, there was not prejudice because the jury was instructed not to concern themselves with rulings on objections. We agree there was no prejudice, but for a different reason. Later in closing arguments, Champion's counsel directed the jury to the text messages regarding the $50,000 and stated "There's no mention of the words settlement agreement in those. It talks about scope of the work. That's what it says. So, it's hard to read the document and interpret that as a settlement agreement, when it says scope of work. It doesn't say settlement agreement." He further argued that "if the July 15th $50,000 agreement was a settlement agreement" Marchese would not have offered to do more work. "He's got this $50,000 scope of work, but he wants more work."

The additional arguments by Champion presented the jury with the option of finding that the $50,000 was the amount agreed upon by the parties for the scope of work involved and not a settlement agreement. Therefore, Champion was not prejudiced by the county court's sustaining of ServPro's objection or in the district court's determination that Champion was not prejudiced. Error without prejudice is not a ground for reversal. *Keiser v. Keiser*, 310 Neb. 345, 965 N.W.2d 786 (2021).

Champion makes no separate argument in support of its assigned error that the district court erred in affirming the judgment of the county court based on the errors committed by the county court, so we do not separately address this assigned error. See *TNT Cattle Co. v. Fife*, 304 Neb. 890, 937 N.W.2d 811 (2020) (error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court).

## CONCLUSION

Finding no prejudicial error in either the rulings on the motion in limine or in the instructions given, we affirm the judgment in favor of ServPro in the amount of $28,598.01.

AFFIRMED.

PIRTLE, Chief Judge, participating on briefs.